Robert J. CUMMINS d/b/a Cummins Construction Co., Appellant

v.

ATLAS RAILROAD CONSTRUCTION CO. and St. Paul Mercury Insurance Company, Appellee.

Superior Court of Pennsylvania.

Argued Sept. 19, 2002.
Filed Dec. 30, 2002.

Christopher R. Opalinski, Pittsburgh, for appellant.

Charles B. Watkins, Pittsburgh, for St. Paul Mercury Ins., appellee.

Before: LALLY–GREEN, BENDER, and GRACI, JJ.

GRACI, J.

¶ 1 Robert J. Cummins d/b/a Cummins Construction Co., ("Cummins") appeals from an order of the Allegheny County Court of Common Pleas entered on September 28, 2001, denying his Motion for Recovery of Penalty Interest and Attorneys Fees pursuant to the Commonwealth Procurement Code, 62 Pa.C.S.A. § 3935. We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

¶ 2 The litigation underlying this appeal involves numerous claims for breaches of a subcontract by the Appellee-prime contractor, Atlas Railroad Construction Co. ("Atlas") and their payment bond surety, St. Paul Mercury Insurance Company. Cummins was the subcontractor for Atlas on a rail renewal project for the Port Authority of Allegheny County ("PAT") entitled Phase II, Broadway Avenue Track Renewal Project (the "Project"). Atlas entered into a contract with PAT to provide, among other work, the demolition and excavation of the existing track and the installation of a new track sub-base and concrete forms. Atlas and Cummins entered into a subcontract pursuant to which Cummins was to perform the demolition and installation of a new concrete slab into which Atlas was to place the new steel rail.

¶ 3 During the course of the Project, Cummins performed work outside the scope of Cummins' subcontract. The parties waived the formal written change or-

der[1] requirement of the subcontract, as per industry standard. The parties agreed that Cummins would perform the extra work directed by Atlas and handle the paperwork associated with the changes at the conclusion of the Project.

¶ 4 The subcontract originally included both the 1998 and the 1999 phases of the Project within the scope of Cummins' work. By subsequent agreement, the parties agreed that Cummins would perform only the 1998 phase of the Project, which Cummins completed by the end of August 1998. At that time Cummins submitted its request for the release of its retainage[2] as well as its request for additional compensation of approximately $86,000 relating to the work performed pursuant to the change orders.

¶ 5 Atlas submitted the majority of Cummins' change orders to PAT's engineer, GAI Consultants, Inc. ("GAI"). GAI approved approximately $22,000 of the change orders. Approximately $7,000 of the change orders were disapproved by Atlas without submission to GAI. Atlas sought direct review by PAT with respect to several of the change orders rejected by

GAI. As a result, one of the contested change orders was ultimately approved in full by PAT. Atlas was never paid by PAT for any disapproved change orders. Appellee's Brief, at 4.

¶ 6 In January 1999, following receipt of PAT's decisions regarding Cummins' change orders, Atlas submitted its claims to Cummins for twenty backcharges.[3] The aggregate of the backcharges was approximately $311,000. Prior to trial, Atlas stipulated that Cummins was entitled to payment of approximately $159,000 with respect to six backcharges. Of the remaining backcharges, three were for amounts in excess of $2,200. These three backcharges sought approximately $21,000 for grout installation, $39,500 for pressure washing and $43,000 for a grout overrun. *Id.* at 5. Atlas declined release of Cummins' final retainage pending resolution of the disputed backcharges and change orders.

¶ 7 The original complaint was filed in McKean County on July 8, 1999. The case was transferred to Allegheny County and an Amended Complaint was filed on Feb-

1. Change orders are requests from a contractor to a subcontractor for the performance of additional work outside the scope of the subcontract. Appellant's Brief, at 3.

2. 62 Pa.C.S.A. § 3921. Retainage
(a) Contract provision.—A contract may include a provision for the retainage of a portion of the amount due the contractor to insure the proper performance of the contract except that the sum withheld by the government agency from the contractor shall not exceed 10% of the amount due the contractor until 50% of the contract is completed. When the contract is 50% completed, one-half of the amount retained by the government agency shall be returned to the contractor. However, the architect or engineer must approve the application for payment. The contractor must be making satisfactory progress, and there must be no specific cause for greater withholding. The

sum withheld by the government agency from the contractor after the contract is 50% completed shall not exceed 5% of the value of completed work based on monthly progress payment requests....

3. Backcharges are those amounts reserved by a contractor from amounts due a subcontractor for any breach of contract by the subcontractor. ¶ 15 of the 1997 Subcontract between Atlas & Cummins provides in pertinent part:

In the event of any breach by subcontractor of any provision or obligation of this subcontract, Contractor shall have the right to retain out of and deduct from any payments due or to become due to subcontractor an amount sufficient to completely protect contractor from any and all loss, damage, or expense therefrom, until the situation has been satisfactory remedied or adjusted by subcontract ...

ruary 1, 2000. In the Amended Complaint Cummins sought recovery of, *inter alia*, its contract balance/retainage, approved extra work orders, an agreed early completion bonus, improper subcontract deductions by Atlas and damages for labor inefficiencies caused by Atlas. In response, Atlas filed a counterclaim asserting approximately twenty backcharges against Cummins which Atlas alleged justified the nonpayment of the amounts claimed by Cummins.

¶ 8 Following a jury trial beginning on December 7, 2000, and ending on December 15, 2000, the jury found in favor of Cummins on all claims against Atlas and found against Atlas on all counterclaims/backcharges. Cummins then moved to mold the verdict to incorporate various amounts stipulated by the parties and to add prejudgment interest. In addition, Cummins filed a Motion for Penalty Interest and Attorneys' Fees under the Commonwealth Procurement Code, 62 Pa. C.S.A. § 3935 ("Prompt Pay Act"). On February 12, 2001, the court heard argument on both motions and on March 28, 2001, entered its order molding the verdict in Cummins' favor in the amount of $275,136.80, and denying Cummins' Motion for Penalty Interest and Attorneys' Fees.

¶ 9 Post trial motions were filed by both parties and denied by court order dated April 26, 2001. On April 27, 2001, the trial court vacated a portion of its April 26th order to allow for argument on the post trial motions. Following the filing of briefs for both parties and oral argument on the post trial motions the trial court entered an order on October 1, 2001, denying all post trial motions. The verdict was molded in the amount of $238,149.80 with regular prejudgment interest in the additional amount of $36,987, as calculated from the date of the verdict through March 20, 2001. Cummins filed an appeal with the Superior Court. Atlas did not appeal the denial of its Motion of Post Trial Relief. Atlas satisfied the judgment on January 2, 2002.

¶ 10 The sole issue raised by Cummins on appeal is:

Whether [Atlas's] nonpayment or withholding of a substantial amount of acknowledged contract monies otherwise due [Cummins] on the basis of a number of wholly unsubstantiated and after-the-fact backcharges was "arbitrary or vexatious" so as to justify an award of penalty interest and attorney's fees under 62 Pa.C.S.A. § 3935?

## II. DISCUSSION

¶ 11 Cummins argues that the trial court's refusal to find that Atlas acted in bad faith was against the weight of the evidence. Appellant's Brief, at 10. This Court has consistently held that "a weight of the evidence challenge concedes that there was evidence sufficient to sustain the verdict, but the verdict was against the weight of the evidence." *Fanning v. Davne,* 795 A.2d 388, 393 (Pa.Super.2002) (citation omitted). An appellate court is not "empowered to merely substitute [its] opinion concerning the weight of the evidence for that of the trial judge[,]" rather its role is limited to determining whether the trial court "palpably abused" its discretion. *Zeffiro v. Gillen,* 788 A.2d 1009, 1012 (Pa.Super.2001) (citation omitted). In other words, this Court will respect a trial court's findings with regard to the weight of the evidence "unless it can be shown that the lower court's determination was manifestly erroneous, arbitrary and capricious or flagrantly contrary to the evidence." *Gemini Equipment Co. v. Pennsy Supply, Inc.,* 407 Pa.Super. 404, 595 A.2d 1211, 1215 (1991) (citation omitted). Because the trial judge had the opportunity to hear and see the evidence presented, Pennsylvania appellate courts have agreed

that "[t]rial courts are in the best position both to find the facts, and also to determine their weight and credibility." *West Conshohocken Restaurant Associates, Inc. v. Flanigan,* 737 A.2d 1245, 1248 (Pa.Super.1999).

¶ 12 Trial courts have great latitude and discretion in awarding attorney fees when authorized by contract or statute. Generally, "[t]he denial of a request for attorney's fees is a matter within the sound discretion ·of the trial court, which will be reversed on appeal only for a clear abuse of that discretion." *Hart v. O'Malley,* 781 A.2d 1211, 1216 (Pa.Super.2001) (addressing the standard of review in the context of denial of attorneys' fees under the Dragonetti Act, 42 Pa.C.S.A. § 8353(3) and (4), that created a cause of action for wrongful use of civil proceedings) (citation omitted); *Township of Lower Merion v. QED, Inc.,* 762 A.2d 779, 781 (Pa.Cmwlth. 2000) (*en banc*) (addressing standard of review in context of denial of counsel fees requested pursuant to 42 Pa.C.S.A. § 2503(9))[4]. The Prompt Pay Act permits a court, in its discretion, to award a subcontractor/plaintiff penalty interest and attorneys' fees in certain circumstances. It provides, in pertinent part:

> (a) **Penalty.**—If ... a claim with ... a court of competent jurisdiction is commenced to recover payment due under [the Prompt Pay Act] and it is determined that the ... contractor... has failed to comply with the payment terms of [the Prompt Pay Act],... the court **may** award, in addition to all other damages due, a penalty equal to 1% per month of the amount that was withheld

in bad faith. An amount shall be deemed to have been withheld ·in bad faith to the extent that the withholding was arbitrary or vexatious. An amount shall not be deemed to have been withheld in bad faith to the extent it was withheld pursuant to section 3934 (relating to withholding of payment for good faith claims).

> (b) **Attorney fees.**—[T]he prevailing party in any proceeding to recover any payment under [the Prompt Pay Act] **may** be awarded a reasonable attorney fee in an amount to be determined by the ... court ..., together with expenses, if it is determined that the ... contractor ... acted in bad faith. An amount shall be deemed to have been withheld in bad faith to the extent that the withholding was arbitrary or vexatious.

62 Pa.C.S.A. § 3935 (emphasis added).

¶ 13 In the only reported decision under the Prompt Pay Act, the United States District Court for the Eastern District of Pennsylvania found that

> the specific language of this section provides that not all violations of this section will result in the imposition ·of a penalty. Bad faith will only found where there is a finding of arbitrary or vexatious behavior, thus implying that behavior which is not arbitrary or vexatious will not be in·violation of this section. Good faith or mistaken violations of the Act will not be penalized.

*ATAP Construction, Inc. v. Liberty Mutual Insurance Co.,* 1998 WL 341931 *7, 1998 U.S. Dist. LEXIS 9384 *24 (E.D. Pa. filed June 25, 1998) (footnote omitted) (discuss-

---

4. 42 Pa.C.S.A. § 2503 **Right of participants to receive counsel fees**

    The following participants shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter:

    . . . .

(9) Any participant who is awarded counsel fees because the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith.

. . . .

ing 73 P.S. § 1626.5, which has since been recodified at 62 Pa.C.S.A. § 3935).[5] The terms "arbitrary" and "vexatious" are not defined by the Prompt Pay Act. This Court has held that, "[a]bsent a definition in a statute, statutes are presumed to employ words in their popular and plain everyday sense, and popular meanings of such words must prevail." *Commonwealth v. Barnhart*, 722 A.2d 1093, 1096 (Pa.Super.1998) (citing *Centolanza v. Lehigh Valley Dairies, Inc.*, 540 Pa. 398, 658 A.2d 336 (1995)). *See also* 1 Pa.C.S.A. § 1903(a) ("Words and phrases shall be construed according to ... their common and approved usage ..."). Moreover, this Court has previously referred to Webster's Dictionary to determine the popular meaning of an undefined word in a statute. *See Department of Labor and Industry, Bureau of Employment Sec. v. Unemployment Compensation Bd. of Review*, 203 Pa.Super. 183, 199 A.2d 474, 477–78 (1964). Webster's Dictionary defines "arbitrary" as "determined by impulse or whim" and "vexatious" as "causing or creating vexation" which is then defined as "a source of annoyance or irritation." Webster's II New College Dictionary 57, 1229 (2001).

¶ 14 The Pennsylvania courts have utilized these definitions in their interpretation of other statutes authorizing the recovery of attorneys' fees based upon findings of "arbitrary" and "vexatious" behavior. In a decision upholding an award of attorney's fees pursuant to 42 Pa.C.S.A. § 2503 for the arbitrary and vexatious initiation of suit, the Pennsylvania Supreme Court defined "arbitrary" as "based on random or convenient selection or choice rather that on reason or na-

ture." *Thunberg v. Strause*, 545 Pa. 607, 682 A.2d 295, 299 (1996) (citation omitted.) The Court referred to Black's Law Dictionary when it defined a lawsuit "vexatiously" filed if filed "without sufficient ground in either law or in fact and if the suit served the sole purpose of causing annoyance." *Id.* Finally, the Court defined a "bad faith lawsuit" as one filed "for purposes of fraud, dishonesty, or corruption." *Id.* (citations omitted) This Court has recognized that 42 Pa.C.S.A. § 2503(9) can also be applied to the raising of defenses. *Cher–Rob, Inc. v. Art Monument Co.*, 406 Pa.Super. 330, 594 A.2d 362, 364 (1991) (citing *White v. Redevelopment Authority*, 69 Pa.Cmwlth. 307, 451 A.2d 17 (1982)).[6]

¶ 15 Cummins admitted that, "[a]ny one of these payment breaches by Atlas—by itself—could be claimed to be the result of some 'good faith' dispute." Appellant's Brief, at 17. However, Cummins argued, it was the collective, systematic nonpayment of all the claims that constituted arbitrary behavior requiring the imposition of penalty and attorney fees. *Id.* The trial court refused to find that Atlas acted in bad faith and rejected Cummins' argument that Atlas' failure to prevail on any issue at trial required a finding by the trial court of bad faith on Atlas' part. 1925(a) Opinion, at 3–4. Cummins asserted in his brief that the trial court indicated prior to trial that a one-sided result would be equivalent to a finding of bad faith by the jury. Appellant's Brief, at 17. However, our review of the record indicates this to be the position of counsel for Cummins, not the trial court. N.T., 2/12/01, at 7–10. Instead, the trial

---

5. Decisions of the lower federal courts are only persuasive authority and not binding on Pennsylvania courts even when a federal question is involved. *Willard v. Interpool, Ltd.*, 758 A.2d 684 (Pa.Super.2000); *Martin v. Hale*, 699 A.2d 1283 (Pa.Super.1997).

6. As section 2503(9) employs words and phrases identical to the Prompt Pay Act— "arbitrary," "vexations," "bad faith"—cases interpreting that section are particularly helpful in resolving this claim.

court held, "[f]or this Court to make a finding of bad faith and impose sanctions merely because the jury found Atlas liable for all disputed claims would be improper insofar as such a finding is not based on deliberate factual or legal determinations." 1925(a) Opinion, at 3.

¶ 16 The cautionary language used by this court regarding the imposition of penalties relative to the initiation of suit is equally applicable to actions taken in defense of litigation.

> Actions are not brought only where there is certain proof of liability and damages. Punishing all those who initiate actions which are not ultimately successful by granting ... counsel fees would have a chilling effect on [the] right to bring a suit .... This was not the intent of the rule permitting recovery of counsel fees upon a showing of arbitrary, vexatious or bad faith conduct.

*Santilo v. Robinson*, 383 Pa.Super. 604, 557 A.2d 416, 417 (1989).

¶ 17 Absent a specific finding by the jury of arbitrary or vexatious conduct by Atlas, we find no abuse of discretion by the trial court for refusing to equate a jury finding for Cummins on all claims to a finding of bad faith, requiring the award of penalty interest and attorney fees under the Prompt Payment Act.[7]

¶ 18 Cummins also argues that Atlas' backcharges were "wholly unsubstantiated" and "after-the-fact." In support of this argument, Cummins refers to the fact that they did not receive notice of the backcharges until five months after the completion of the job, Appellant's Brief, at 17–18, and the fact that Atlas never discussed the backcharges with Cummins during the course of the project. *Id.* Cummins cites *Link–Sulzbach Corp. v. Robinson*, 15 Pa. D. & C.4th 365 (Montgomery Cty.1992),[8] in support of his claim that these actions constituted bad faith. Appellant's Brief, at 15. We find Cummins' reliance on *Link–Sulzbach* to be misplaced. The plaintiff in *Link–Sulzbach* was an electrical subcontractor who succeeded in recovering for additional work performed under the contract. The subcontractor also was successful in recovering attorney's fees under 42 Pa.C.S.A. § 2503(7) and § 2503(9). The trial court rejected the contractor's arguments of

---

7. There was a disagreement between the trial court and Appellants regarding the submission of Cummins' claims for interest and penalty fees to the jury. Cummins' claimed in its 1925(b) Statement, which incorporated its Motion for Post Trial Relief, that "the Court, *sua sponte*, advised Cummins that it would not permit the issues regarding penalty interest and attorney fees to be presented to the jury based upon the Court's view that such issues were legal determinations for the Court," and that "[t]he Court overruled [Cummins'] objection and the case proceeded in a bifurcated manner ...." Motion for Post Trial Relief, at ¶ 5.

The trial court found Cummins' assertions, "[c]ontrary to the independent recollections of this Court," and stated that "the first time Cummins objected to the bifurcation on the record was, conveniently, after this Court had made findings (adverse to Cummins) in its Order of March 28, 2001, that attorney fees and penalty interest against Atlas were not warranted." 1925(b) Opinion, at 2. The trial court found that Cummins failed to preserve its objection to bifurcation for appeal by failing to object to the alleged refusal to allow the jury to decide the issues of penalty interest and attorney fees, by failing to take exception to the jury charge and by failing to request an interrogatory on the bad faith issue. *Id.* at 3. Cummins did not raise the issue in its brief. Therefore, it is waived. *Harkins v. Calumet Realty Co.*, 418 Pa.Super. 405, 614 A.2d 699 (1992).

8. Appellate courts are not bound by decisions of the courts of common pleas. *Commonwealth v. Webster*, 452 Pa.Super. 258, 681 A.2d 806 (1996); *Jamison v. Concepts Plus, Inc.*, 380 Pa.Super. 431, 552 A.2d 265 (1988).

good faith because it found the contractor was "fully aware the plaintiff's work was complete and in compliance with the electrical code when the counterclaim was brought." *Link–Sulzbach,* 15 Pa. D. & C. 4th at 374–375. The defendant's expert never examined the job for defects until four years after the job was completed and seven months after the counterclaim was filed. He then found the work in compliance with the National Electrical Code. *Id.*

¶ 19 However, *Link–Sulzbach* and the case at bar are easily distinguished. Submitting backcharges within five months of the completion of work by the subcontractor and prior to filing suit places Atlas in a substantially different posture from the contractor in *Link–Sulzbach.* A five-month interval between completion of work and submission of backcharges does not appear to constitute excessive delay in light of the magnitude of the project and the fact that Atlas was still engaged in work on the project.

¶ 20 At no time did Cummins dispute Atlas' right to make backcharges. Although Cummins complained repeatedly about Atlas' failure to discuss the backcharges with Cummins, Cummins failed to support its complaint with any evidence that Atlas was required to provide Cummins with prior notice for backcharges. With the benefit of hindsight, we observe that better communication between Atlas and Cummins during the course of the Project regarding change orders and backcharges would have been helpful and quite possibly could have prevented the present conflict. However, the failure of Atlas to engage in such discourse does not constitute arbitrary or vexatious behavior.

¶ 21 Furthermore, the record does not support Cummins' allegations that other individual backcharges were either fabricated or made in bad faith. The jury specifically found that a "good faith dispute" existed between Atlas and Cummins over responsibility for the subgrade remediation, the largest single change order for extra work submitted by Cummins, comprising approximately $39,000 of Cummins' $86,000 of change orders. Jury Interrogatory, No. 2.

¶ 22 The record also indicates that a good faith dispute existed regarding the payment of retainage. Atlas' refusal to pay Cummins' its pro rata share of the retainage following Cummins' refusal to execute a final release of liens in accordance with the close out process, N.T., at 261–262, appears to be a negotiation strategy utilized to protect their interests rather than evidence of bad faith.

¶ 23 The record supports the trial judge's findings that there were good faith disputes relative to other disputed backcharges, including the grout overruns and pressure washing claims. Atlas' project manager went into substantial detail at trial regarding the methods he used for calculating the amount of the backcharge for the grout, N.T., at 626–631, and for the pressure washing, N.T. at 598–609. The fact that the jury chose to find against Atlas regarding these charges does not require a finding that they were made in bad faith. The trial court found "that Atlas' actions never rose to the level of being arbitrary or vexatious." 1925(a) Opinion, at 4.

### III. CONCLUSION

¶ 24 The imposition of penalty interest and attorneys fees under the Prompt Pay Act is committed to the sound discretion of the trial court, which **may**, but is not required to award such additional damages. *See* 62 Pa.C.S.A. § 3935(a) and (b). While, if we were addressing this question as a court of original jurisdiction, we might have reached a different conclusion, we

cannot say that the learned trial court's determination was manifestly erroneous, arbitrary and capricious or flagrantly contrary to the evidence. Accordingly, we conclude that the trial court did not palpably abuse its discretion when it refused to award penalty interest and attorneys fees under § 3935(a) and (b).

¶ 25 Order affirmed.

¶ 26 LALLY–GREEN, J., concurs in result.