CLEVELAND ASPHALT INC., Romano Paving and Excavating, Inc., Walter G. Romano, Sr., Linda K. Romano, Appellants,

v.

The COALITION FOR A FAIR AND SAFE WORKPLACE, a/k/a The Coalition for a Safe Workplace, Dennis Gresman, David Knickerbocker, Matthew Maclellan, Matt Patton and Denny Forsythe, Appellees.

Superior Court of Pennsylvania.

Argued Aug. 30, 2005.

Filed Oct. 26, 2005.

Frank G. Verterano, New Castle, for appellants.

Joshua M. Bloom, Pittsburgh, for Forsythe, Gresman, Maclellan and Knickerbocker and The Coalition, appellees.

James G. Porcaro, Cleveland, OH, for The Coalition.

BEFORE: BENDER, POPOVICH and JOHNSON, JJ.

OPINION BY POPOVICH, J.:

¶ 1 In this consolidated appeal, Cleveland Asphalt, Inc., Romano Paving and Excavating, Inc., Walter G. Romano, Sr., and Linda K. Romano (collectively Appellants) appeal the orders entered on May 26, 2004, and October 7, 2004, in the Court of Common Pleas of Lawrence County, that dismissed their preliminary injunction against The Coalition For a Fair and Safe Workplace a/k/a The Coalition For a Fair and Safe Workplace, Dennis Gresman, David Knickerbocker, Matthew Maclellan, Matt Patton, and Denny Forsythe (collectively Appellees) and granted an award of counsel fees in Appellees' favor.[1] Upon review, we affirm.

¶ 2 The relevant facts of this case are as follows: Appellants Cleveland Asphalt, Inc., and Romano Paving and Excavating, Inc., are corporations, with their businesses and offices headquartered on East Poland Avenue, in the Borough of Bessem-

---

1. This Court consolidated these appeals *sua* *sponte* on November 3, 2004.

er, Lawrence County, Pennsylvania. The corporations are in the roadway construction business in Pennsylvania and Ohio, and their employees are not unionized. Individual Appellants Walter G. Romano, Sr., and his wife, Linda K. Romano, are the principal owners of the corporations.

¶ 3 Appellee Coalition For a Fair and Safe Workplace is a non-profit corporation organized and registered in the state of Ohio, comprised of an association of construction laborers from various unions and established to highlight and draw public attention to unfair working conditions throughout the entire construction industry. Appellee Coalition For a Fair and Safe Workplace is affiliated with unions that monitor worksites for safety, wage issues, and other labor-related issues. Individual Appellees Dennis Gresman, David Knickerbocker (Knickerbocker), Matthew Maclellan, Matt Patton, and Denny Forsythe are members of or affiliated with Appellee Coalition For a Fair and Safe Workplace.

¶ 4 The present dispute arose as a consequence of Appellee Knickerbocker's contact with Appellants in July of 2003. At that time, Appellee Knickerbocker traveled to a construction project being performed by Appellants in Columbiana County, Ohio. Upon arriving at the jobsite, Michael Romano, the son of Appellant Walter G. Romano, engaged in a verbal confrontation with Appellee Knickerbocker. Although Appellee Knickerbocker attempted to leave the jobsite during the altercation, Mr. Romano struck Appellee Knickerbocker in the back of the head. After this confrontation, Appellee Knickerbocker learned from Brian Daugherty that Mr. Daugherty was assaulted by Michael Romano and his brother, Thomas Romano, while Mr. Daugherty was attempting to organize Appellants' employees into membership within a labor union.

¶ 5 Based on this information and his previous experience with Mr. Romano, Appellee Knickerbocker and other members of the local labor community planned a demonstration against Appellants at their place of business in Bessemer, Pennsylvania. This demonstration occurred on November 14, 2003, and was led by Appellee Coalition For a Fair and Safe Workplace. There were between 80 and 100 demonstrators present at the demonstration, and they represented multiple labor unions from several states. The demonstration took place on a right-of-way near Appellants' property. In response to this demonstration, Appellant Walter G. Romano called the Pennsylvania State Police. After arriving and communicating with the demonstrators, the Pennsylvania State Police allowed the demonstrators to remain on the right-of-way. The Pennsylvania State Police did not arrest any demonstrators. In all, the demonstration lasted for approximately three hours.

¶ 6 On November 21, 2003, following the demonstration, Appellants filed a complaint for injunctive relief. Thereafter, on November 26, 2003, Appellants filed a petition for preliminary or special injunctive relief, which they served promptly on Appellees. Pending a full hearing of Appellants' complaint for injunctive relief, the trial court issued an *ex parte* special injunction on November 26, 2003. The trial court's order, *inter alia*, enjoined Appellees from having more than six pickets at Appellants' businesses or properties, interfering with Appellants' employees, preventing access to Appellants' properties by mass demonstration, pickets, or threats, and conspiring with others to interfere with or injure Appellants' operations. In addition, the trial court's order scheduled a hearing on Appellants' petition with proper notice to Appellees.

¶ 7 The trial court conducted two hearings on Appellants' complaint for injunctive relief on December 1 and 3, 2003. The trial court entertained extensive arguments by the parties, and the parties submitted briefs of their arguments to the trial court. On May 26, 2004, the trial court concluded, pursuant to the Pennsylvania Labor Anti–Injunction Act, 43 P.S. § 206a, *et seq.* (LAIA), that Appellants were precluded from enjoining Appellees' demonstration activities. The trial court authored an opinion in support of its order.[2] Thereafter, on June 22, 2004, Appellants filed a timely notice of appeal to this Court. The trial court did not order Appellants to file a concise statement of matters complained of on appeal, and it did not author a second opinion with regard to its May 26, 2004 order.

¶ 8 After Appellants filed their notice of appeal, Appellees sought an award of $3,390.00 for counsel fees and costs of suit. On October 7, 2004, the trial court granted Appellees' request and awarded Appellees $3,390.00 for counsel fees and costs of suit. The trial court authored an opinion in support of its order. Thereafter, Appellants filed a timely second notice of appeal to this Court from the trial court's award of counsel fees and costs.[3] The trial court did not order Appellants to file a concise statement of matters complained of on appeal, and it did not author a second opinion in support of its order of October 7, 2004.

¶ 9 Appellants present the following issues for our review:

1. Was the [trial] court's preliminary injunction limiting picketing void for want of jurisdiction?

2. Did the enjoined demonstration arise out of a "labor dispute" as that term is defined in the Labor Anti–Injunction Act?

3. Did [Appellees] engage in mass picketing?

4. Were [Appellees] entitled to attorney's fees?

5. Assuming [Appellees] were entitled to attorney's fees, was the amount awarded excessive?

Appellants' brief, at 5.[4]

¶ 10 Although presented in their "statement of questions," Appellants fail to put forth any argument regarding the jurisdiction of the trial court to entertain its petition for a preliminary injunction. We glean from the record that Appellants, in fact, challenge the trial court's conclusion that it was without authority under the LAIA to issue an *ex parte* special injunction because the LAIA requires strict adherence to its requirements in order for

---

**2.** In its opinion, the trial court concluded that it was without authority to issue an *ex parte* special injunction prior to its disposition of Appellants' complaint for injunctive relief. *See* Trial court opinion, 5/26/2004, at 3 n. 1.

**3.** In its opinion filed October 6, 2004, the trial court asserted that its previous order of May 26, 2004, was an interlocutory order and, therefore, not final for purposes of review. *See* Trial court opinion, 10/6/2004. The trial court reached this conclusion because the LAIA requires an award of counsel fees to the defendants if the complaint for injunctive relief is denied, *see* 43 P.S. § 206q, but its May 26, 2004 order did not award counsel fees to

Appellees. Although the trial court is correct that the denial of a preliminary injunction is *not* a final order, it is, nevertheless, an interlocutory order appealable as of right pursuant to Pa.R.A.P. 311(a)(4). Therefore, Appellants were obligated to file a notice of appeal from the trial court's May 26, 2004 order regardless of the disposition of the counsel fee issue. In any event, Appellants filed timely notices of appeal from both the May 26, 2004 order and the October 7, 2004 order, and, therefore, this appeal is properly before this Court. *See* Pa. R.A.P. 311(a)(4).

**4.** We have renumbered Appellants' issues.

a trial court to issue any type of injunctive relief in a labor dispute. *See* Trial court opinion, 5/26/2004, at 3 n. 1. We may, even in the absence of an argument from Appellants, review this issue. *See Rieser v. Glukowsky,* 435 Pa.Super. 530, 646 A.2d 1221, 1223 (1994) (appellate courts may review question of trial court's jurisdiction *sua sponte* even if parties do not challenge trial court's jurisdiction when case is pending before that court). However, the trial court dissolved the potentially erroneous injunction and, following proper notice, conducted a full hearing on the matter with all parties in attendance at the hearing. Therefore, whatever jurisdictional error was occasioned by the trial court's erroneous injunction was later corrected by the trial court. Accordingly, we decline to delve further into this issue.

¶ 11 Appellants second and third issues contend that the trial court misapplied the LAIA. In addressing these issues, we apply the following standard of review:

> [O]n an appeal from a decree which refuses, [or] grants ... a preliminary injunction we will look only to see there were any apparently reasonable grounds for the action of the court below, and we will not further consider the merits of the case or pass upon the reasons for or against such action unless it is plain that no such grounds existed or that the rules of law relied on are palpably wrong or clearly inapplicable.

*Wilkes–Barre Independent Company v. Newspaper Guild Local 120,* 455 Pa. 287, 289, 314 A.2d 251, 253 (1974) (citations and quotation marks omitted).

¶ 12 The public policy of the LAIA is declared in Section 206b of the Act, which states the following:

> In the interpretation of this act and in determining the jurisdiction and authority of the courts of this Commonwealth, as such jurisdiction and authority are defined and limited in this act, the public policy of this Commonwealth is hereby declared as follows:
>
> (a) Under prevailing economic conditions developed with the aid of governmental authority for owners of property to organize in the corporate and other forms of ownership association, the individual unorganized worker is commonly helpless to exercise actual liberty of contract and to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment, wherefore, though he should be free to decline to associate with his fellows, it is necessary that he have full freedom of association, self-organization, and designation of representatives of his own choosing to negotiate the terms and conditions of his employment, and that he shall be free from the interference, restraint or coercion of employers of labor or their agents in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection.
>
> (b) Equity procedure that permits a complaining party to obtain sweeping injunctive relief that is not preceded by or conditioned upon notice to and hearing of the responding party or parties or that permits sweeping injunctions to issue after hearing based upon written affidavits alone and not wholly or in part upon examination, confrontation and cross-examination of witnesses in open court is peculiarly subject to abuse

in labor litigation for the reasons that—

(1) The status quo cannot be maintained, but is necessarily altered by the injunction.

(2) Determination of issues of veracity and of probability of fact from affidavits of the opposing parties that are contradictory and under the circumstances untrustworthy rather than from oral examination in open court is subject to grave error.

(3) Error in issuing the injunctive relief is usually irreparable to the opposing party; and

(4) Delay incident to the normal course of appellate practice frequently makes ultimate correction of error in law or in fact unavailing in the particular case.

¶ 13 Therefore, the LAIA exists to balance an employer's right to do business with the right of employees to promote equal bargaining in employment through free association and peaceable assembly. 43 P.S. §§ 206a–206r. In order to ensure that the aforementioned policy is enforced by the courts of this Commonwealth, the LAIA prohibits generally the issuance of injunctive relief in "labor disputes" between "employers," "employe[e]s," and "associations of employees," and "affiliated organizations," as defined by the LAIA. *See* 43 P.S. §§ 206c, 206f. The definitions for these terms are set forth in Section 206c of the LAIA as follows:

¶ 14 When used in this act and for purposes of this act—

(a) A case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in a single industry, trade, craft or occupation, or have direct or indirect interests therein, or who are employes of the same employer, or who are members of the same or an affiliated organization of employers or employes, whether such dispute is—(1) between one or more employers or associations of employers, and one or more employes or associations of employes; (2) between one or more employers or associations of employers, and one or more employers or associations of employers; or (3) between one or more employes or association of employes, and one or more employes or association of employes; or when the case involves any conflicting or competing interests in a "labor dispute" (as hereinafter defined) of "persons participating or interested" therein (as hereinafter defined).

(b) A person or association shall be held to be a person participating or interested in a labor dispute if relief is sought against him or it, and if he or it is engaged in the same industry, craft or occupation in which such dispute occurs or has a direct or indirect interest therein, or is a member, officer or agent of any association composed in whole, or in part, of employers or employes engaged in such industry, trade, craft or occupation.

(c) The term "labor dispute" includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment or concerning employment relations or any other controversy arising out of the respective interests of employer and employe, regardless of whether or not the disputants stand in the proximate relation of employer and

employe, and regardless of whether or not the employes are on strike with the employer.

* * *

(g) The term "employer" is declared to include master, and shall also include natural persons, partnerships, unincorporated associations, joint-stock companies, corporations for profit, corporations not for profit, receivers in equity, and trustees or receivers in bankruptcy.

(h) The term "employe" is declared to include all natural persons who perform services for other persons, and shall not be limited to the employes of a particular employer, and shall include any individual who has ceased work as a consequence of, or in connection with, any matter involved in a labor dispute.

(i) The term "organization" shall mean every unincorporated or incorporated association of employers or employes.

(j) The term "labor organization" shall mean every organization of employes, not dominated or controlled by any employer or any employer organization, having among its purposes that of collective bargaining as to terms and conditions of employment.

¶ 15 Section 206i of the LAIA establishes the limited set of circumstances whereby a trial court may issue an injunction in a "labor dispute." In order to obtain injunctive relief in a "labor dispute," a complainant must prove all of the following factors:

(a) That unlawful acts have been threatened and will be committed unless restrained, or have been committed and will be continued unless restrained, but no temporary or permanent injunction or temporary restraining order shall be issued on account of any threat or unlawful act, excepting against the person or persons, association or organization, making the threat or committing the unlawful act, or actually authorizing or ratifying the same after actual knowledge thereof.

(b) That substantial and irreparable injury to complainant's property will follow unless the relief requested is granted.

(c) That, as to each item of relief granted, greater injury will be inflicted upon complainant by the denial of relief than will be inflicted upon defendants by granting of relief.

(d) That no item of relief granted is relief which is prohibited under section six of this act.

(e) That complainant has no adequate remedy at law; and

(f) That the public officers charged with the duty to protect complainant's property are unable to furnish adequate protection.

43 P.S. § 206i.

¶ 16 First, Appellants contend that they were not involved in a "labor dispute" with Appellees, and, as such, the LAIA does not apply. A review of the aforementioned statutory definitions belies Appellants' argument. From the testimony presented at the hearings, it is clear that Appellees, although not employed by Appellants, are an association of construction workers and labor organizations that advocate for better working conditions on behalf of construction workers. Therefore, applying the definition of "employee" in the LAIA, we are satisfied that Appellees are "employees," as defined by the LAIA. *See* 43 P.S. § 206c(a) (definition of "employee" in LAIA includes all natural persons who perform services for other per-

sons and term is not limited to employees of a particular employer). Appellants are a corporation employing individuals for construction jobs and are the principal owners of that corporation. Accordingly, Appellants are "employers" as defined by the LAIA. *See* 43 P.S. § 206c(g).

¶ 17 The record reflects that Appellees were concerned with labor issues at Appellants' worksites, including, alleged violent behavior by Appellants' supervisors toward agents of organized labor and injuries and deaths at Appellants' worksites, as well as other issues regarding compensation for employees. As such, Appellees sought to demonstrate near Appellants' place of business to shed light on these issues. Certainly, these concerns cut to the heart of the working conditions of Appellants' regular employees. Appellees' stated purpose is to represent all construction laborers and advocate on their behalf. Therefore, the controversy between Appellants and Appellees is a "labor dispute" as defined by the LAIA. *See* 43 P.S. § 206c(c). Likewise, Appellees and Appellants are "parties interested in a labor dispute" as defined by 43 P.S. § 206c(b).

¶ 18 Contrary to Appellants' argument, it is irrelevant whether Appellees do or do not have collective bargaining as a purpose of their association. This is because Appellees are an "association" of "employees" and not a "labor organization" as defined by the LAIA. As stated above, the definition of "employee" in the LAIA includes all natural persons who perform services for other persons, and this term is not limited to those employees of a particular "employer," *i.e.*, Appellants. *See* 43 P.S. § 206c(g). The testimony presented at the hearings indicates that Appellees' members meet the definition of "employee."

However, the term "association" is not defined explicitly by the statute, and, therefore, we afford the term its plain, ordinary meaning. *See* 1 Pa.C.S.A. 1903(a).

¶ 19 *Black's Law Dictionary* defines the world "association," as used in this context, in the following fashion:

A gathering of people for a common purpose; the persons so joined.

*Black's Law Dictionary,* 133 (8th ed.2004).[5]

¶ 20 Appellee Coalition For a Fair and Safe Workplace is an incorporated organization of laborers and labor organizations with a common purpose and a formal structure. Accordingly, Appellee Coalition For a Fair and Safe Workplace is an "association" for purposes of the LAIA. Therefore, we are satisfied that the controversy between Appellants and Appellees is a "labor dispute," as defined by the LAIA and that each party is a party "interested in a labor dispute" as defined by the LAIA. *See* 43 P.S. §§ 206c(a), (b), and (c). Therefore, Appellants' argument fails.

¶ 21 Appellants' argue next that even if a "labor dispute" as defined by the LAIA existed between the parties, the LAIA should not apply in this instance. It is correct that, in certain limited situations, the LAIA does not apply to "labor disputes." *See* 43 P.S. § 206d. The LAIA defines these situations at 43 P.S. § 206d, which states, in pertinent part, the following:

No court of this Commonwealth shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case included within this act, except in strict conformity with the provisions of this act, nor shall any such restraining order or temporary or per-

5. The primary definition offered for "association" in *Webster's Encyclopedic Dictionary* is, "An organization of people with a common purpose and having a formal structure." *Webster's Encyclopedic Dictionary,* 126 (1996).

manent injunction be issued contrary to the public policy declared in this act. Exclusive jurisdiction and power to hear and determine all actions and suits coming under the provisions of this act, shall be vested in the courts of common pleas of the several counties of this Commonwealth: Provided, however, That this act shall not apply in any case—.

* * *

(d) Where in the course of a labor dispute as herein defined, an employe, or employes acting in concert, or a labor organization, or the members, officers, agents, or representatives of a labor organization or anyone acting for such organization, seize, hold, damage, or destroy the plant, equipment, machinery, or other property of the employer with the intention of compelling the employer to accede to any demands, conditions, or terms of employment, or for collective bargaining.

¶ 22 Appellants contend that Appellees seized the plant through mass picketing, and, as such, the LAIA does not apply. In *Giant Eagle Mkts. Co. v. United Food and Commercial Workers Union, Local No. 23*, 539 Pa. 411, 652 A.2d 1286 (1995), our Supreme Court held that a "seizure" occurs pursuant to 43 P.S. § 206d when the effect of the activities of the picketers is to deny the employer, its agents, and its employees free access to the employer's property. *Id.,* at 425, 652 A.2d at 1292. In other words, mass picketing becomes a seizure when it ceases to perform its lawful purpose of placing the public on notice that a strike is underway and, instead, becomes a means of influencing labor negotiations through harassment and intimidation. *Id.,* at 426, 652 A.2d at 1293. However, isolated acts of intimi-

dation or the application of force do not constitute a "seizure" for purposes of the statute. *Id.,* at 425, 652 A.2d at 1292.

¶ 23 The record reflects that the demonstrators present at Appellants' business were not acting violently, and they did not prevent any individual from entering or leaving Appellants' property. Although some demonstrators were arrayed in costumes that decried Appellants' alleged employment practices, none of these individuals physically threatened Appellants' employees or agents or forbade them from going about their business. Indeed, Ms. Juliana Danielle, Appellant Walter G. Romano's daughter, admitted on cross-examination that the demonstrators present at the scene were polite to her when she was videotaping the demonstration for her father. Likewise, Rick Elia, a reporter called to testify on Appellants' behalf, testified that the demonstrators were not in an unruly state during the demonstration. Therefore, we are satisfied that Appellees did not "seize" Appellants' plant. Accordingly, Appellants' argument fails.

¶ 24 Appellants assert next that Appellees were not entitled to an award of counsel fees by the trial court. Section 206q of the LAIA is explicit in its direction that, upon denial of a complaint for injunctive relief in a labor dispute, "the [trial] court *shall* order the complainant to pay reasonable costs and expenses of defending the suit and a reasonable counsel fee." 43 P.S. § 206q. Inasmuch as we have determined that Appellants' complaint for injunctive relief was denied properly by the trial court, it is clear that Appellees were entitled to an award of counsel fees and costs pursuant to Section 206q of the LAIA.

¶ 25 Next, Appellants assert that the trial court's award of counsel fees to Appellees was excessive. The reasonable-

ness of counsel fees is a matter committed to the sound discretion of the trial court. We, as an appellate court, will not disturb the trial court's decision absent an abuse of that discretion. *See In re Trust Estate of LaRocca*, 431 Pa. 542, 547–49, 246 A.2d 337, 339 (1968).

¶ 26 Appellants contend that 43 P.S. § 206j prohibits recovery of counsel fees in excess of a bond filed by a complainant in a labor injunction case. Appellants assert that federal cases interpreting a similar provision of the Norris–LaGuardia Act, 29 U.S.C. 101, *et seq.*, militate in favor of limiting recovery for counsel fees and costs to the amount of the posted bond.

¶ 27 Title 43 P.S. § 206j states the following:

No temporary restraining order or temporary injunction shall be issued in any case involving or growing out of a labor dispute, except on condition that complainant shall first file an undertaking with adequate security, in an amount to be fixed by the court, sufficient to recompense those enjoined for any loss, expense or damage caused by the improvident or erroneous issuance of such order or injunction, including all reasonable costs (together with a reasonable attorney's fee), and expense of defense against the order, or against the granting of any injunctive relief sought in the same proceeding and subsequently denied by the court.

The undertaking herein mentioned shall be understood to signify an agreement entered into by the complainant and the surety, upon which a decree may be rendered in the same suit or proceedings against said complainant and surety upon a hearing to assess damages, of which hearing complainant and surety shall have reasonable notice, the said complainant and surety submit-

ting themselves to the jurisdiction of the court for that purpose. But nothing herein contained shall deprive any party having a claim or cause of action under or upon such undertaking from electing to pursue his ordinary remedy by suit at law or in equity.

¶ 28 The language in this provision is nearly identical to that contained in Section 107 of the Norris–LaGuardia Act. In analyzing this Section 107 of the Norris–LaGuardia Act, several federal circuit courts have held that recovery for counsel fees and costs was limited to the amount of the bond. *See International Assoc. of Machinists and Aerospace Workers v. Eastern Airlines, Inc.*, 925 F.2d 6, 10 (1st Cir.1991); *see also International Ladies' Garment Workers' Union v. Donnelly Garment Co.*, 147 F.2d 246, 253 (8th Cir. 1945), *cert. denied*, 325 U.S. 852, 65 S.Ct. 1088, 89 L.Ed. 1972 (1945) (holding that labor organization was not entitled to recover in excess of bond because it did not complain regarding condition of bond or adequacy of security required by trial court).

¶ 29 In stark contrast to this line of cases, the United States Circuit Court of Appeals for the Third Circuit held in *United States Steel Corp. v. United Mine Workers*, 456 F.2d 483 (3rd Cir.1972), *cert. denied*, 408 U.S. 923, 92 S.Ct. 2492, 33 L.Ed.2d 334 (1972), that a labor organization could recover counsel fees and costs in excess of the posted bond because the language and purpose of the Norris–LaGuardia Act reflected a desire by the United States Congress to prevent judges on federal district courts in the 1930s from rubber-stamping requests by large corporate employers for injunctions against labor unions. *United States Steel*, 456 F.2d at 493. Thus, after recognizing the different tenor in the present-day federal court system with regard to labor disputes, the

Third Circuit found that a reading of Section 107 of the Norris–LaGuardia Act that would permit those same federal judges to exercise nearly unbridled discretion in fashioning the extent of liability for a complainant under the Norris–LaGuardia Act would violate the Norris–LaGuardia Act's purpose. *Id.*, 456 F.2d at 493.

¶ 30 We recognize that federal cases construing a federal law similar to a Pennsylvania statute are not binding on this Court. *See Cummins v. Atlas R.R. Const. Co.*, 814 A.2d 742, 747 n. 5 (Pa.Super.2002). Nevertheless, these cases are persuasive authority for our disposition. *Id.*, 814 A.2d at 747 n. 5. Given the tumultuous history of labor relations in this Commonwealth, and, indeed, its effect on the development of federal labor law, we have little difficulty in adopting the Third Circuit's holding in *United States Steel* to the present case. As the Third Circuit recognized, to place in the hands of a trial court (and, consequently, the employer) the extent of liability for the employer under the LAIA would cause irreparable mischief to those organizations without the financial means to combat improper employment practices committed by larger corporate employers. Moreover, a fair reading of the second clause of 43 P.S. § 206j indicates that, in addition to recovery of the amount of a bond, a party aggrieved under the LAIA may pursue a suit at law or in equity to obtain relief. Thus, it is apparent that an aggrieved party may obtain damages *greater* than the amount of the bond. Lastly, it is noteworthy that the LAIA contains a provision requiring the *mandatory* award of counsel fees for the defendants where a complainant's request for injunctive relief is denied, whereas the Norris–LaGuardia Act does not contain

such a provision. *See* 43 P.S. § 206q. Consequently, we are satisfied that the trial court did not abuse its discretion when it awarded counsel fees in an amount greater than the posted bond. Accordingly, Appellants' argument fails.

¶ 31 Appellants contend next that the grant of counsel fees by the trial court to the multiple attorneys who represented both the individual Appellees and Appellee Coalition For a Fair and Safe Workplace was excessive because the express language of the LAIA mandates an award of "a reasonable attorney's **fee**," *i.e.*, a single fee for one particular attorney. *See* 43 P.S. § 206j (emphasis added). As support for this argument, Appellants cite the general proposition that a law enacted before September 1, 1937, that is in derogation of a common law rule must be construed strictly. *See* 1 Pa.C.S.A. § 1928(a). The LAIA was enacted on June 2, 1937, and is in derogation of the common law rule that requires each party in a lawsuit to pay for their own counsel fees.[6] Consequently, the rules of statutory construction require that we must construe the provisions of the LAIA strictly. 1 Pa.C.S.A. § 1928(a). Even accepting Appellants' assertion as true, the doctrine of strict construction does not require this Court to entertain an absurd construction of a statute.

¶ 32 In the first instance, it is clear that the trial court awarded counsel fees to Appellees pursuant to 43 P.S. § 206q, which states the following:

> Upon denial by the court of any injunctive relief sought in an action involving or growing out of a labor dispute, the court shall order the complainant to pay reasonable costs and expenses of defending the suit and a reasonable **counsel** fee.

6. This rule is known as "The American Rule." *See, e.g., Lavelle v. Koch*, 532 Pa. 631, 617 A.2d 319 (1992) (counsel fees may not be taxed to party absent express statutory authorization, a clear agreement of the parties, or some other established exception).

¶ 33 The noun "counsel," when used in common parlance to designate a member of the legal profession, may be either singular or plural. *See Webster's Encyclopedic Dictionary*, 460 (1996). Moreover, 1 Pa.C.S.A. § 1902, requires that when a court construes a statute, "[t]he singular shall include the plural, and the plural the singular." This provision is nearly identical to that found in now-repealed 46 P.S. § 532 (1937, May 28, P.L. 1019, Art. III, § 32), which rule of statutory construction was in force at the time of the adoption of the LAIA. Therefore, the term "reasonable **counsel fee**" found in the Section 206q of the LAIA includes the plural "fees" and connotes the plural usage of the word "counsel."

¶ 34 Further, we disagree with Appellants' argument that the individual Appellees were not entitled to an award of counsel fees because their interests were represented adequately by Appellee Coalition For a Fair and Safe Workplace. Reference to Appellants' complaint for injunctive relief indicates that all Appellees were named as defendants. Inasmuch as the LAIA applies with equal force in disputes between employers and individual employees as well as "associations" of employees, Appellants' argument is without merit. Accordingly, Appellants' argument fails.

■ ¶ 35 Lastly, Appellants argue that the trial court abused its discretion by awarding counsel fees to Appellees for services rendered by counsel after December 3, 2003, *i.e.*, after the hearings were concluded and for including counsel's travel time in the award. Appellants' first argument fails for the following reasons: (1) Appellees' counsel responded to Appellants' petition for indirect contempt after December 3, 2003; (2) Appellees had to petition the trial court to resolve the counsel fee issue; and (3) the case, at least in part, was proceeding through the stages of appellate review after December 3, 2003. Certainly, the term "reasonable costs of defending the suit" within Section 206q of the LAIA includes the costs associated with the aforementioned litigation. Further, we have reviewed counsel's expenses, and, like the trial court, we are satisfied that those expenses were reasonable. Accordingly, Appellants' argument fails.

■ ¶ 36 Likewise, we are satisfied that the trial court did not abuse its discretion by including travel time for Appellees' counsel as part of its award of counsel fees. Appellants assert that Attorney Eben O. McNair, IV, Esquire, counsel for Appellee Coalition For a Fair and Safe Workplace, inappropriately billed his full rate for the 2.5 hour return trip to his office in Cleveland after the hearing because he did not perform legal work for Appellee Coalition For a Fair and Safe Workplace on his return trip. In contrast to Appellants' assertion, the affidavit of Attorney McNair indicates that he returned to Cleveland in the same car with his client and that he, in fact, conducted legal work with his client during the return trip. Therefore, the trial court's award is supported by the record, and we will not reverse it. *See LaRocca*, at 547–49, 246 A.2d at 339.

¶ 37 Appellants also argue that Attorney Joshua Bloom, counsel for Appellee Knickerbocker, also overbilled for his travel time. Attorney Bloom, whose office is in Pittsburgh, billed his client 8.5 hours of work for traveling to and attending the hearing. Appellee Knickerbocker explains that this time included 3 hours of actual travel time, 1½ hours of preparation for the hearing, and 4 hours of attendance at the hearing. The trial court accepted Attorney Bloom's billing as a reasonable expression of Attorney Bloom's work for the day of the hearing, and we will not reverse it.

*See LaRocca,* at 547–49, 246 A.2d at 339. Accordingly, Appellants' argument fails.

¶ 38 As each of Appellants' arguments fail, we affirm the orders of the trial court.

¶ 39 Orders affirmed.