THE PIETRINI CORPORATION t/a B. Pietrini & Sons, Inc., Appellant

v.

AGATE CONSTRUCTION CO., INC. and National Fire Ins. Co. of Hartford.

Superior Court of Pennsylvania.

Argued Feb. 1, 2006.

Filed June 13, 2006.

Edward Seglias, Philadelphia, for appellant.

Michael P. Subak, Philadelphia, for Agate, appellee.

BEFORE: McCAFFERY, PANELLA and JOHNSON, JJ.

OPINION BY PANELLA, J.:

¶ 1 Appellant, The Pietrini Corporation, appeals from the order entered on April 21, 2005, in the Court of Common Pleas of Philadelphia County, which denied Pietrini's motions for penalties and attorney's fees under the prompt pay provisions of the Pennsylvania Procurement Code. After a careful review, we reverse.

¶ 2 The litigation underlying this appeal arose out of the construction of a tower foundation to support a tram line spanning the Delaware River ("the project"). In November of 2000, the Delaware River Port Authority ("DRPA"), a public authority, engaged Turner Construction Company as the general contractor to supervise the project. Thereafter, in March 2001, Turner hired Appellee, Agate Construction Company, to erect a tower foundation for the project. Subsequently, on March 7, 2001, Agate subcontracted with Pietrini to provide labor and concrete materials for all permanent construction above the caisson cap on the tower. The initial value of the contract to Pietrini was $571,061.00.

¶ 3 Pursuant to its contract with Agate, Pietrini was initially scheduled to begin work in July 2001. However, due to delays at the site, Pietrini was unable to begin its work until October 31, 2001. This late start caused Pietrini to take longer than expected and necessitated extra work due to winter conditions. Furthermore, while construction on the project was in progress, Agate and Pietrini agreed that Pietrini would perform additional work due to design modifications.

¶ 4 In February of 2002, Pietrini submitted a series of change order requests seeking an additional $92,351.53 to pay for the work necessitated by the design changes. Agate submitted these requests to Turner, which approved some of the requests and rejected others. Pietrini subsequently completed its work on the project and submitted invoices to Agate totaling $194,251.92.

¶ 5 In September 2002, Agate and Turner closed out the project. Thereafter, in January 2003, Agate received Turner's final payment for the project. Agate advised Pietrini that Agate would only pay Pietrini the sum of $101,251.92 for Pietrini's work on the project, approximately $76,000 of which consisted of final payment pursuant to the original contract, with the remainder consisting of payment for ap-

proved change orders. Agate demanded that Pietrini sign a full release of all liens and claims relating to the project before it would pay Pietrini any sums.

¶ 6 Pietrini refused to sign the release, as it continued to maintain that it was entitled to $194,251.92 for its work on the project. Agate refused to pay in the absence of the release, consequently, on January 8, 2003, Pietrini filed a complaint against Agate alleging claims for breach of contract, unjust enrichment, *quantum meruit*, and violations of the Commonwealth Procurement Code.[1] Subsequently, on April 21, 2003, Agate filed its Answer to Pietrini's complaint. Agate admitted that it owed Pietrini the sum of $74,334.10 under the contract, however, Agate alleged that Pietrini was not entitled to any payment from Agate due to defective work and Pietrini's failure to provide a final release.

¶ 7 Trial commenced on January 12, 2005, and continued to January 14, 2005. Prior to the entry of the jury's verdict, Agate stipulated that Pietrini was entitled to judgment in the sum of $101,900.39 for undisputed claims, reserving for the jury's decision Pietrini's claims for an additional $108,508.53. During trial, the trial court determined that the issue of whether the $101,900.39 was withheld in contravention of the procurement code would not be put before the jury. Rather, the trial court ruled that the issue was one for the court to decide after the entry of the jury's verdict. Eventually, the jury returned a verdict in favor of Pietrini in the amount of $60,103.18.

¶ 8 Following the trial, the parties submitted briefs to the trial court supporting their positions on Pietrini's claim that Agate violated the procurement code. Subsequently, on March 10, 2005, without a hearing, the trial court entered an order denying Pietrini's claim for penalties and attorney's fees under the procurement code. Pietrini subsequently requested a post-trial hearing and reconsideration of the procurement code claim, which the trial court granted.

¶ 9 On April 19, 2005, the trial court heard testimony on the issue. At the close of the hearing, the trial court took the matter under advisement. Thereafter, on April 21, 2005, the trial court again denied Pietrini's request for penalties and attorney's fees. Pietrini filed a notice of appeal on May 13, 2005, and the trial court subsequently entered final judgment in Pietrini's favor on June 15, 2005. Pietrini's appeal is now ripe for our review.

¶ 10 On appeal, Pietrini raises the following questions for our review:

A. Whether Agate acted arbitrarily and vexatiously, as described in the Pennsylvania Procurement Code, 62 Pa.C.S. § 3931, *et seq.*, when it withheld from Pietrini funds that were undisputedly due merely because Pietrini would not release its claims for certain disputed change order

---

1. 62 PA.CONS.STAT.ANN. § 101 et seq. "The Procurement Code applies to 'every expenditure of funds, other than the investment of funds, by Commonwealth agencies under any contract....' 62 Pa.C.S. § 102(a). The term 'contract' is defined as a 'type of written agreement, regardless of what it may be called, for the procurement or disposal of supplies, services or construction.' 62 Pa. C.S. § 103. 'Procurement' means 'buying, purchasing, renting, leasing, licensing or otherwise acquiring any supplies, services or construction,' while the term 'supplies' includes equipment, materials, and tangible personal property. *Id.*" *On–Point Technology Systems, Inc. v. Com., Dept. of Revenue,* 569 Pa. 236, 240, 803 A.2d 1175, 1178 (2002). Penalty interest and attorneys' fees are remedies available under the prompt pay provisions of the Procurement Code, 62 PA.CONS. STAT.ANN. § 3935.

work or requests for compensation for extra work[?]

. . .

B. Whether Pietrini is entitled to attorney's fees pursuant to the Pennsylvania Procurement Code, 62 Pa.C.S. § 3931, *et seq.*, where Agate withheld in bad faith amounts that were undisputedly due Pietrini[?]

. . .

C. Whether Pietrini is entitled to penalties pursuant to the Pennsylvania Procurement Code, 62 Pa.C.S. § 3931, *et seq.*, where Agate withheld in bad faith amounts that were undisputedly due to Pietrini[?]

Appellant's Brief, at 3.

¶ 11 As an initial matter, we note that the parties disagree as to the proper standard of review applicable in this appeal. Pietrini contends that "[t]he questions presented by this instant appeal involve legal findings made by the trial court." *Id.*, at 1. As such, Pietrini argues that our proper standard of review is *de novo. Id.* In contrast, Agate maintains that this Court has previously established the proper standard of review of a trial court decision under the prompt pay provisions of the Commonwealth Procurement Code in *Cummins v. Atlas R.R. Construction Co.,* 814 A.2d 742 (Pa.Super.2002). Agate contends that under *Cummins,* the proper standard of review is "whether the trial court palpably abused its discretion." Appellee's Brief, at 1.

¶ 12 In the case *sub judice,* unlike *Cummins,* all of the relevant facts are undisputed. Agate agreed that Pietrini was owed $101,900.39 under the contract, and admitted as much in its answer to Pietrini's complaint. Furthermore, Agate conceded that it withheld payment on the $101,900.39 due to Pietrini in an effort to gain leverage in negotiations over Pietrini's remaining claims. However, even in the presence of an undisputed factual record such as this, the award of penalties and attorney's fees under the procurement code is an issue that under common circumstances requires reference to existing norms of conduct. As such, the decision remains committed to the sound discretion of the trial court, which we will reverse only in the presence of a palpable abuse of discretion.

¶ 13 Turning to the merits of the appeal, under the Prompt Pay Act, in the absence of sufficient reason, a contractor must pay a subcontractor within twenty days of receiving payment itself. 62 PA. CONS. STAT. ANN. § 3922. Accordingly, a trial court may award a subcontractor penalties and attorney's fees if it concludes that, under the circumstances, the contractor acted in an arbitrary and vexatious manner. in withholding payment. 62 PA. CONS. STAT. ANN. § 3935. "Arbitrary" in this context has been held to mean "based on random or convenient selection or choice rather tha[n] on reason or nature." *Cummins,* 814 A.2d 742, 747 (Pa.Super.2002) (quoting *Thunberg v. Strause,* 545 Pa. 607, 615, 682 A.2d 295, 299–300 (1996)). "Vexatious" has been defined as a legal strategy "without sufficient ground in either law or in fact and ... serv[ing] the sole purpose of causing annoyance." *Id.*

¶ 14 Pietrini argues that the trial court abused its discretion by concluding that Agate's conduct in this matter was not arbitrary or vexatious. In support, Pietrini notes the following undisputed facts:

1) Agate received final payment from Turner;

2) part of which was Pietrini's earned share;

3) Agate did not pay Pietrini its earned share within 20 days of receiving the payment from Turner; and

4) the sole reason Agate withheld the vast majority of this payment was that Agate wanted Pietrini to waive all other claims for payment on the project.[2]

Pietrini contends that under these circumstances, it was error for the trial court to conclude that Agate's conduct was not arbitrary or vexatious.

¶ 15 In addressing this issue, the trial court concluded that Agate's conduct, while a "harsh negotiating tactic," did not constitute arbitrary and vexatious actions. Trial Court Opinion, 7/5/2005, at 3–4. However, the decision of the trial court misinterprets the nature of the procurement code. The Prompt Pay Act was intended to negate just such "harsh negotiating tactics" in public projects. Viewed in this light, the conduct in issue here constituted *coercion*, not *negotiation*. Clearly, Agate's tactic supported a finding of vexatious behavior as the intended effect was to compel Pietrini, by denying it money undisputedly due under the subcontract, into surrendering legitimate avenues to pursue other legal and meritorious claims. We have little doubt that such coercive actions caused "annoyance" to Pietrini.

■ ¶ 16 In contrast, Agate argues that the case *sub judice* is controlled by *Cummins*. We find *Cummins* easily distinguishable. In that case, the plaintiff/appellant, Cummins, was a subcontractor hired to demolish an existing railroad track and install a new sub-base and concrete forms to allow for the installation of a new railroad track. *Cummins*, 814 A.2d at 743. Cummins completed the work, and also performed some work outside the scope of the subcontract. *Id.* at 743–744. At the close of the project, defendant/appellee, Atlas, refused to pay Cummins until a dispute over backcharges was resolved.[3] *Id.* at 744. Atlas claimed that the backcharges owed by Cummins exceeded the amount Cummins was due under the subcontract. *Id.* at 744–745.[4] That being the case, Atlas had a good faith reason to refuse to pay Cummins under the subcontract, as it believed it did not in fact owe Cummins any additional payments. During the litigation, Cummins conceded as much, causing this Court to note: "Cummins admitted that any one of these payment breaches by Atlas—by itself—could be claimed to be the result of some good faith dispute." *Cummins*, 814 A.2d at 747 (internal quotation marks, brackets, and citation omitted).

¶ 17 Rather than focusing its argument on unpaid invoices, Cummins argued that Atlas's conduct as a whole constituted arbitrary behavior. *Id.* This Court properly concluded that a one sided verdict does not create a *per se* finding of bad faith. *Id.* at 748.

¶ 18 In the case *sub judice*, however, Agate did not dispute the validity of a major portion of the debt owed Pietrini. As aforesaid, Agate stipulated at trial that Pietrini was owed at least the sum of

---

**2.** Agate withheld approximately $1500 due to a backcharge related to street repair.

**3.** "Backcharges are those amounts reserved by a contractor from amounts due a subcontractor for any breach of contract by the subcontractor." *Cummins*, 814 A.2d at 744, fn. 3.

**4.** While the *Cummins* opinion does not explicitly state the amount Cummins sought in its complaint, the jury found in favor of Cummins on all claims and on all counter-claims and awarded $275,136.80 to Cummins. This complete victory on all underlying claims was still less than the $311,000.00 Atlas claimed in backcharges.

$101,900.39. Therefore, with respect to the sum of $101,900.39, there was no good faith dispute as existed in *Cummins*. Furthermore, there was no possibility that Agate would not owe Pietrini this sum; in contrast to the scenario in *Cummins*, Agate did not assert counterclaims against Pietrini that if found valid by the factfinder would have been sufficient to nullify its obligation to Pietrini.

¶ 19 Agate argues, nonetheless, that the subcontract required Pietrini to submit a full and final release of all claims before final payment, and that this contractual requirement acted to override the statutory mandate contained in the Prompt Pay Act. We disagree. The clear intent of the Prompt Pay Act is to level the playing field between contractors and subcontractors when they are working on public projects. As such, the Prompt Pay Act requires contractors on public projects to honor their contractual obligations and pay subcontractors for all items satisfactorily completed. 62 PA.CONS.STAT.ANN. § 3934(a). Agate agreed to this standard when it contracted with the DRPA through Turner. We discern no reason to determine that Pietrini should be held to an overly strict interpretation of its contract while allowing Agate to ignore the known conditions contained in the Prompt Pay Act.

¶ 20 In summary, we conclude that no good faith dispute existed with regard to the $101,900.39. The trial court abused its discretion by finding that Agate's withholding of that sum of money was not vexatious. The release of claims requirement in the subcontract did not act to vitiate Agate's duty under the Prompt Pay Act to deal in good faith with respect to payments to subcontractors. Accordingly, in order to implement the provisions of 62 PA.CONS.STAT.ANN. § 3935, we remand this case to the trial court for an assessment of penalties on the sum of $101,900.39. Furthermore, the trial court is to determine the amount of attorney's fees, together with expenses, related to the recovery of that sum, to be assessed against Agate.

¶ 21 Judgment vacated. Case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.