**A. SCOTT ENTERPRISES, INC.**

v.

**CITY OF ALLENTOWN, Appellant.**

**A. Scott Enterprises, Inc., Appellant**

v.

**City of Allentown.**

Commonwealth Court of Pennsylvania.

Argued Sept. 11, 2014.

Decided Oct. 21, 2014.

Reargument Denied Dec. 5, 2014.

ascertain White's subjective knowledge, so we cannot consider such a resolution.

James T. Huber, Allentown, for designated appellant City of Allentown.

Frank Nofer, King of Prussia, for designated appellee A. Scott Enterprises, Inc.

BEFORE: MARY HANNAH LEAVITT, Judge, PATRICIA A. McCULLOUGH, Judge, and ROCHELLE S. FRIEDMAN, Senior Judge.

OPINION BY Judge LEAVITT.

The City of Allentown (City) appeals an order of the Lehigh County Court of Common Pleas (trial court) entering a judgment in favor of A. Scott Enterprises, Inc. (Contractor) on its breach of contract action and denying the City's motion for a new trial. The trial court awarded Contractor $929,299 in damages, but Contractor argues that it was also entitled to penalties, attorney's fees and interest and, therefore, has cross-appealed. We affirm in part and reverse and remand in part.

## Background

Contractor was the successful bidder on the City's planned two lane, one mile roadway called "New England Avenue." The bid price was $2,949,760 and was to be 100 percent paid by the Pennsylvania Department of Transportation (PennDOT) with funds it received from the Federal Highway Administration. Accordingly, PennDOT was responsible for ensuring that the project complied with all applicable state and federal specifications. To that end, PennDOT has issued "Publication 408," which sets forth the specifications for all its construction projects. The project's bid documents did not disclose the possibility of hazardous materials at the project site even though the City's consultant, Michael Baker, Jr., Inc. (Baker) had advised the City of this possibility. The City did not test for hazardous contaminated soil. The project was expected to be completed by October of 2010.

The agreement between the City and PennDOT provided for PennDOT's reimbursement of invoices submitted by the City. However, that agreement exempted late charges and environmental problems from reimbursement unless attributed to PennDOT's acts or omissions. Specifical-

ly, the agreement stated that PennDOT would not reimburse the City for costs relating to or resulting from changes made to the approved plans and/or specifications for the project, time delays and extensions of time, interest for late payments, unforeseen costs for environmental litigation and reports, and all other unforeseen costs and expenses directly related to or caused by the planning and/or design of the project and not due to the negligent [act or] omission of [PennDOT].

Trial ct. op. at 7. The agreement further provided that PennDOT would not reimburse the City for work in addition to that in the bid specifications unless first approved in writing by PennDOT. By contrast, the contract between Contractor and the City did not state that Contractor needed the City's written approval for such additional work.

On October 19, 2009, Contractor began work by setting up field offices, unloading equipment, surveying and clearing the site, and setting up erosion and sediment control barriers. Four weeks later Contractor learned that a pile of dirt on the construction site might be contaminated by arsenic and notified the City of this fact. The City suspended work on the project on November 25, 2009.

In mid-December 2009, PennDOT, the City and Baker met at the work site. Thereafter, PennDOT authorized APEX Companies, LLC, an environmental consultant, to do a site evaluation. Contractor retained its own expert, American Analytical and Environmental, Inc., which determined the levels of arsenic were low enough for residential development. American Analytical also advised Contractor that the contaminated soil could be

kept on-site while the job went forward. In March 2010, APEX completed its study and agreed with American Analytical's report. However, the APEX report did not provide guidance on how to handle the contaminated soil.

On March 24, 2010, the City informed Contractor that the Pennsylvania Department of Environmental Protection (DEP) had determined that because of the contamination, the project's National Pollutant Discharge Elimination System (NPDES) permit had to be modified before the project could resume. On March 31, 2010, Contractor sent a letter to the City about the additional erosion control and site stabilization requirements and the changed insurance risk. Because the scope of the additional work was unknown, Contractor requested the project to proceed on a force account basis.[1] The City declined to proceed on a force account basis, even though this was an option available under the contract.

DEP issued a modified NPDES permit, with the condition that the contaminated soil be surrounded by Filtrexx SilSoxx to prevent contamination offsite. DEP advised Contractor that it was responsible for employee safety issues relating to the handling of the contaminated soil. Contractor advised the City that it would be maintaining force account records because of the additional work, that it was ready to recommence work and that the City was responsible for its idled equipment and the additional costs incurred by the discovery of contaminated soil.

On July 23, 2010, the City directed Contractor to comply with the waste management plan developed by its consultant, APEX. The City agreed that the contami-

---

1. Force account work is work that goes beyond that set forth in the contract and is generally paid on a time and material basis.

*Green Construction Company v. Department of Transportation*, 164 Pa.Cmwlth. 566, 643 A.2d 1129, 1131 n. 1 (1994).

nated soil was a material change that warranted adjustments to the contract, including the completion date. The City directed Contractor to prepare a Health and Safety Plan, to provide a price proposal for the extra work and to obtain pollution liability insurance. The City authorized the resumption of work in accordance with the Waste Management Plan and upon completion of the Health and Safety Plan.

In August 2010, Contractor returned to the site and demolished a portion of an existing bridge, and left the site three weeks later. On September 28, 2010, a meeting was held between all the parties to address the completion of the project. After the meeting, the parties agreed that Contractor would: (1) get an estimate of the cost of pollution insurance, (2) determine the cost of terminating the contract and (3) explore the possibility of employing subcontractors qualified to work with arsenic-contaminated soils. Contractor contacted a number of subcontractors, and on December 21, 2010, provided the City a written proposal to complete the work for approximately $4.4 million. The proposal stated that upon the City's acceptance, work would resume on January 3, 2011. Accordingly, Contractor developed a Work Safety Plan, a Health and Safety Plan, and obtained the necessary environmental insurance. Contractor again suggested a force account method of payment.

The City responded that it was uncertain about the repricing and requested more explanation. However, the City did not authorize Contractor to demobilize and continued to expect Contractor to maintain the on-site facilities as well as the erosion and sediment controls.

The parties continued to meet. In June 2011, Contractor submitted the requested explanation of the charges. Contractor's suspension costs of $1.8 million combined with the subcontractors' proposal increased the bid overall by $2.8 million. The City responded that it was unwilling to approve these additional expenses without assurances from PennDOT of federal funding. However, the City never submitted these new cost estimates to PennDOT for its review and approval.

On August 4, 2011, Contractor initiated a lawsuit to recover its losses on the project. After a six-day trial, the jury awarded Contractor damages in the amount of $927,299 to cover its losses caused by the City's suspension of the project. The jury found that the City breached its contract with Contractor and acted in bad faith, which violated the Procurement Code. The trial court entered judgment to this effect on January 31, 2013.

The City filed a post-trial motion for judgment *n.o.v.* or for a new trial. Contractor filed a motion to mold the verdict to include attorney's fees and penalty interest, as well as interest on the judgment. When the trial court did not rule on the parties' post-trial motions, Contractor filed a praecipe for judgment.[2] In response, the trial court issued an opinion on February 28, 2014, explaining its decision.[3] Both parties appealed to this Court.[4]

---

**2.** Pennsylvania Rule of Civil Procedure 227.4 authorizes the prothonotary to enter judgment where the court "grants or denies relief but does not itself enter judgment." PA. R.C.P. No. 227.4(2).

**3.** Contractor filed a second notice of appeal from the trial court's February 28, 2014, order and opinion. The trial court filed a second opinion on May 29, 2014, incorporating the February 2014, opinion in its entirety.

**4.** In reviewing a trial court's refusal to enter a judgment *n.o.v.,* this Court's review "is limited to a determination of whether the trial court abused its discretion or committed an error of law necessary to the outcome of the case." *Snyder v. North Allegheny School District,* 722 A.2d 239, 242 n. 9 (Pa.Cmwlth.

## Appeal Issues

The City raises several issues. First, the City argues that the trial court erred in permitting John Maloney, an accountant, and Wayne DiMarco, a civil engineer, to testify as experts. Second, the City argues that the trial court erred in permitting the jury to consider the issue of bad faith. Third, the City argues that Contractor's evidence did not establish its claim for contract damages. Contractor responds that the City has waived these issues but, in any case, they lack merit.

On its cross-appeal, Contractor contends that the trial court erred because it did not award a statutory penalty and attorney's fees after the jury found that the City acted in bad faith, in violation of the Procurement Code. Likewise, the trial court erred because it did not award interest on the jury's damage award. The City responds that the Procurement Code does not mandate a penalty or attorney's fees. It also argues that Contractor's damages were too uncertain for the imposition of either pre-judgment or post-judgment interest.

## Waiver

We begin with Contractor's waiver argument. It contends that the City did not identify where and when it preserved the issues it asks this Court to review.[5]

Contractor argues, first, that the City waived its appeal issues because its brief to this Court sets forth a statement of facts that is not presented in the light most favorable to the winning party. In *Kraus v. Taylor*, 710 A.2d 1142 (Pa.Super.1998), the court stated that the appellant's failure to discuss the evidence in the light most favorable to the verdict winner in crafting his argument would result in waiver. *Kraus*, 710 A.2d at 1146 n. 3. This statement is *obiter dicta*. In any case, the court in *Kraus* was concerned that appellant had failed to present the facts in the light most favorable to the verdict winner *in crafting his argument*, not in reciting the facts. *Id.* ("The *argument section* of appellant's brief relating to this issue does not analyze the evidence in the light most favorable to appellee Taylor, the verdict winner.") (emphasis added). Contractor also cites *Browne v. Commonwealth of Pennsylvania*, 843 A.2d 429 (Pa.Cmwlth. 2004), which held that an *issue* that is not raised below or properly briefed will be waived. Neither *Kraus* nor *Browne* holds that an appellant must present its statement of the case in its brief in a way that

---

1998). We must view the evidence in the light most favorable to the party prevailing below and give such party every logical inference. *Id.* Judgment *n.o.v.* is only appropriate in clear cases and any doubts must be resolved in favor of the verdict winner. *Moure v. Raeuchle*, 529 Pa. 394, 604 A.2d 1003, 1007 (1992). The movant must be entitled to judgment *n.o.v.* either as a matter of law or when the evidence is such that no two reasonable minds could disagree that the outcome should have been in favor of the movant. *Id.*

A motion for a new trial is within the sound discretion of the trial court based on the circumstances of the particular case. *Felix v. Baldwin–Whitehall School District*, 5 Pa. Cmwlth. 183, 289 A.2d 788, 789 (1972). The

trial court's decision to grant or deny such a motion will only be reversed if the trial court manifestly abused its discretion or committed a clear error of law. *Id.*

5. Contractor also argues that the City waived all issues by failing to properly identify the relevant standards and scope of review. However, Contractor does not cite to any case law supporting this argument nor does it more fully argue this point. Therefore, we will not consider this argument. *Commonwealth v. Spontarelli*, 791 A.2d 1254, 1259 n. 11 (Pa.Cmwlth.2002) ("Mere issue spotting without analysis or legal citation to support an assertion precludes our appellate review of [a] matter.").

is favorable to the winning party.[6] We reject this asserted basis for waiver.

Contractor next argues that the City did not identify where it preserved the issues for review. For example, it contends that the City objected to the expert testimony of John Maloney and Wayne DiMarco "on extremely limited grounds," which was inadequate to preserve the issue. Contractor's Brief at 22. The City contends that it preserved all issues for appeal with timely objection at trial and by filing post-trial motions.

■ A timely objection is required to preserve a matter for appeal. *Samuel–Bassett v. Kia Motors America, Inc.*, 613 Pa. 371, 34 A.3d 1, 45 (2011). Pennsylvania Rule of Evidence 103 states that if evidence is admitted, a party preserves a matter for appeal by timely objecting and stating the specific ground for the objection. PA. R.E. 103(a)(1)(B). Once the court makes a definitive ruling on the record, the party is not required to renew the objection to preserve the matter for appeal. PA. R.E. 103(b). Likewise, Rule 227.1 of the Pennsylvania Rules of Civil Procedure states that post-trial relief may be granted if the grounds were raised by "motion, objection, point for charge . . . or other appropriate method at trial." PA. R.C.P. No. 227.1(b)(1).

We conclude that the City preserved the issue of expert qualification by objecting at trial to the testimony of Maloney and DiMarco. Reproduced Record at 908a, 936a

(R.R. ——). The City also objected to the submission of the issue of bad faith to the jury and challenged the viability of Contractor's breach of contract damages at trial, both in its proposed jury instructions and in its motion for directed verdict. R.R. 966a–67a, 1072a–73a; Defendants' Proposed Jury Instructions, ¶¶ 4, 7.[7] The City also raised these issues in its post-trial motion.[8] R.R. 2362a–64a. Accordingly, we reject Contractor's waiver arguments.

## Expert Testimony

The City argues that the trial court improperly allowed Contractor's accounting expert, John Maloney, to opine on the meaning and application of the highway construction specifications found in PennDOT's Publication 408. It also argues that the trial court should not have permitted Wayne DiMarco to give an opinion on arsenic concentration levels and testing procedures because he is not a geologist or environmental engineer.

■ The standard for qualification of an expert witness in Pennsylvania is a liberal one. *Miller v. Brass Rail Tavern, Inc.*, 541 Pa. 474, 664 A.2d 525, 528 (1995). An expert is qualified to provide expert testimony when the witness has "any reasonable pretension to specialized knowledge on the subject" in question. *Id.* If the witness does, he may testify and the weight given to such testimony is for the trier of fact to determine. *Id.* An expert may be qualified to render an expert opin-

---

6. The Rules of Professional Conduct impose a duty of candor on attorneys regarding both fact and the law, and forbid parties from raising frivolous arguments. PA. R.P.C. 3.1, 3.3. Lawyers are not required to present an "impartial exposition of the law" but must not "allow the tribunal to be misled by false statements of law or fact." PA. R.P.C. 3.3, cmt. 2.

7. The proposed jury instructions are found in the certified record.

8. The trial court found that the City had waived the contract damages issue by failing to identify where the objections were raised. However, in its appeal to this Court, the City identified where it made its objections, specifically in filing a motion for directed verdict. Therefore, the issue may be addressed.

ion based on training and experience. *Id.* The key question is whether the witness possesses "more knowledge than is otherwise within the ordinary range of training, knowledge, intelligence or experience." *Id.* Qualification of an expert witness is within the sound discretion of the trial judge and may not be overturned on appeal absent an abuse of discretion. *Id.* The complaining party must also have been prejudiced. *Keffer v. Bob Nolan's Auto Service, Inc.,* 59 A.3d 621, 633 (Pa.Super.2012).

■ John Maloney was presented by Contractor as an accounting expert with over 30 years of experience in construction accounting. The City objected to Maloney's testimony about Publication 408 because it is not an accounting document. The trial court recognized Maloney as an expert in the field of accounting "with a broad focus ... in the construction field." R.R. 908a. Maloney testified that he used formulas set forth in Publication 408 as a "guideline" for calculating damages. We reject the City's contention that only a civil engineer may testify about the formulas in Publication 408. Maloney is an expert in construction accounting and used, in part, Publication 408 to calculate damages. Maloney provided the jury with the basis of his damage calculation, which included Publication 408. The jury did not have to use his proffered damages; it could have used Publication 408, which was an exhibit, to render a different damage calculation.

■ Wayne DiMarco has a degree in civil engineering, has worked for his family's construction company for 39 years and has personal experience working on sites with soils contaminated by arsenic. The trial court recognized DiMarco as an expert in "excavating contaminated soil" due to this experience. R.R. 936a. The trial court sustained several of the City's objections to DiMarco's testimony on APEX's

testing, but it did permit DiMarco to testify about his efforts to put together a work plan for the site and whether he would have done any additional testing. The trial court noted that DiMarco had been involved in the project since September 2010.

DiMarco testified on the basis of his experience as a contractor in handling construction sites contaminated by arsenic. We reject the City's argument that Contractor tried to "expand" DiMarco's expertise into geology or environmental engineering. DiMarco did not question the accuracy of the testing done. He merely testified that an experienced contractor would need more information before continuing the project. DiMarco was involved in putting together a plan to handle the arsenic-contaminated soil on the site and was familiar with the details of the soil at the site.

In sum, we conclude that the trial court did not err in qualifying either Maloney or DiMarco as experts.

### Procurement Code Claim

The City argues that Contractor's evidence did not establish bad faith within the meaning of the Procurement Code. Further, it contends that the issue of bad faith should not have been sent to the jury because Contractor never presented the City with an accurate bill and its damages were not finalized until days before trial. In short, the City did not know what amount to pay. Further, Contractor did not certify that it had substantially completed work, as is required by the Procurement Code. Finally, it contends that the trial court relied upon irrelevant facts such as the City's refusal to release Contractor from the contract.

In its cross-appeal, Contractor argues that it was entitled to attorney's fees, as

well as the statutory penalty under the Procurement Code. It contends that the trial court has effectively nullified the jury's finding that the City acted in bad faith by not awarding attorney's fees and penalties. The City counters that the award of attorney's fees and penalties is not mandatory but, rather, a matter of the trial court's discretion.

Under the Procurement Code, a government agency must pay a contractor where performance conforms to the contract. 62 Pa.C.S. §§ 3931(a), 3932(a).[9] The government agency may withhold payment where performance is deficient in some respect but must make payment on all other items that are completed. 62 Pa.C.S. § 3934(a).[10] The government must notify the contractor of the deficiency item within the time period stated in the contract or 15 days after the application for payment is received. 62 Pa.C.S. § 3934(b). Where the government has withheld payment in an arbitrary or vexatious manner,[11] it has acted in bad faith under the Procurement Code. 62 Pa.C.S. § 3935.

■ The contract provided for the City to pay Contractor for costs should the project be suspended. The City suspended work as of November 25, 2009, and it did not order Contractor to demobilize. Indeed, the City does not dispute that Contractor was entitled to payment during the period work was suspended. However, it argues that the work was not certified as complete, which meant the City did not have to pay any of Contractor's suspension cost invoices. Alternatively, it argues that the exact amount owed on suspension costs was uncertain.

Certification or completion of work is not required to make out a claim under the Procurement Code. Section 3934 of the Procurement Code is entitled "Withholding of payment for good faith claims" and states that the government may withhold payment when it believes an item to be deficient based on an inspector's refusal to certify the item as complete under the contract. Here, the City did not claim that all of Contractor's invoices for suspension costs were deficient,[12] and it did not

---

**9.** Section 3931(a) states that "[p]erformance by a contractor in accordance with the provisions of a contract shall entitle the contractor to payment by the government agency." 62 Pa.C.S. § 3931(a). Similarly, Section 3932(a) states that "[t]he government agency shall pay the contractor . . . strictly in accordance with the contract." 62 Pa.C.S. § 3932(a).

**10.** Section 3934 states in relevant part:
(a) When government agency may withhold payment.—The government agency may withhold payment for deficiency items according to terms of the contract. The government agency shall pay the contractor according to the provisions of this subchapter for all other items which appear on the application for payment and have been satisfactorily completed. . . .
(b) Notification when payment withheld for deficiency item.—If a government agency withholds payment from a contractor for a deficiency item, it shall notify the contractor of the deficiency item within the time

period specified in the contract or 15 calendar days of the date that the application for payment is received. . . .
62 Pa.C.S. § 3934.

**11.** The terms "arbitrary" and "vexatious" are not defined. "Arbitrary" has been held to mean "based on random or convenient selection or choice rather than on reason or nature," and "vexatious" has been defined as "a legal strategy without sufficient ground in either law or in fact and serving the sole purpose of causing annoyance." *Pietrini Corp. v. Agate Construction Co.*, 901 A.2d 1050, 1053 (Pa.Super.2006); *Cecil Township Municipal Authority v. North American Specialty Surety Co.*, 836 F.Supp.2d 367, 374 n. 6 (W.D.Pa. 2011).

**12.** The City did make payment on several contract items and paid the undisputed amount of $212,139. However, Contractor sought more than just payment for the contract items, such as suspension costs, which the City did not pay.

notify Contractor that it was withholding payment on a specific invoice. 62 Pa.C.S. § 3934(b). Section 3932(a) requires the government to pay the contractor strictly in accordance with the contract. 62 Pa. C.S. § 3932(a).

There was conflicting evidence on the exact amount the City owed Contractor. However, the City had an obligation to make a good faith effort to pay for Contractor's suspension costs and to pay those invoices it did not challenge. 62 Pa.C.S. § 3932. If the City disputed the amount of a suspension invoice, it was required to so notify Contractor, withhold the disputed amount and pay the remainder of the invoices. Instead the City paid nothing.

As the trial court noted, the City did not direct Contractor to demobilize or to resume work on a force account basis; did not make payment for Contractor's suspension costs; and could have avoided the suspension by investigating whether arsenic was present on the project site prior to submitting the project for bids. On these facts the jury considered whether the City withheld payments from Contractor in bad faith. *James Corp. v. North Allegheny School District,* 938 A.2d 474, 490 (Pa. Cmwlth.2007) (holding that determination of bad faith is a matter of fact, not law) (citing *Cummins v. Atlas Rail Road Construction Co.,* 814 A.2d 742, 748 (Pa.Super.2002)). The trial court did not err in submitting the issue of bad faith to the jury.

The Procurement Code provides for a penalty and reasonable attorney's fees where the government acts in bad faith. 62 Pa.C.S. § 3935. The statute states, in relevant part, as follows:

(a) Penalty.—If arbitration or a claim with ... a court of competent jurisdiction is commenced to recover payment due under this subchapter and it is determined that the government agency ... has failed to comply with the payment terms of this subchapter, ... the court may award, in addition to all other damages due, a penalty equal to 1% per month of the amount that was withheld in bad faith. *An amount shall be deemed to have been withheld in bad faith to the extent that the withholding was arbitrary or vexatious.* An amount shall not be deemed to have been withheld in bad faith to the extent it was withheld pursuant to section 3934 (relating to withholding of payment for good faith claims).

(b) Attorney fees.—Notwithstanding any agreement to the contrary, the prevailing party in any proceeding to recover any payment under this subchapter *may be awarded a reasonable attorney fee in an amount to be determined by the ... court ... together with expenses, if it is determined that the government agency, ... acted in bad faith.* An amount shall be deemed to have been withheld in bad faith to the extent that the withholding was arbitrary or vexatious.

62 Pa.C.S. § 3935 (emphasis added). The jury found bad faith, but the trial court did not award either the statutory penalty or attorney's fees. It denied them with the comment that there had been "conflicting testimony as to damages presented." Trial ct. op at 33.

██ The Procurement Code states that the trial court *may* award a penalty or attorney's fees. However, "may" can convey a mandate, as opposed to permission. In determining which meaning controls, the intent of the legislature must be examined. *Cf. Tyler v. King,* 344 Pa.Super. 78, 496 A.2d 16, 19 (Pa.Super.1985) ("[I]t has long been the rule in Pennsylvania that the word 'shall,' although usually mandatory or imperative when used in a statute, may nonetheless be directory or permissive, de-

pending upon the Legislature's intent.") To determine the legislature's intent, the court must "review[ ] the entire act, its nature, object and purpose, the respective consequences of various constructions of the particular statute, and [determine] whether the action allegedly mandated by the statute is the essence of the thing to be done pursuant to it." *Id.*

■■■■ The purpose of the Procurement Code is to "level the playing field" between government agencies and contractors. *See Pietrini Corp. v. Agate Construction Co.,* 901 A.2d 1050, 1055 (Pa.Super.2006). It advances this goal by requiring a government agency that has acted in bad faith to pay the contractor's legal costs, as well as an interest penalty. Otherwise, the finding of bad faith is a meaningless exercise with no consequence for the government agency found to have acted in bad faith. We conclude that Section 3935 of the Procurement Code requires the imposition of attorney's fees and the statutory penalty upon a jury's finding of bad faith. *See City of Independence v. Kerr Construction Paving Company, Inc.,* 957 S.W.2d 315, 321–23 (Mo. Ct.App.1997) (holding that Missouri's procurement code's use of "may" regarding penalty interest and attorney's fees means "shall" and upon finding of bad faith by jury, trial court must award such damages, even though the extent of damages is a matter for the discretion of trial judge).[13]

However, the *amount* of the award of attorney's fees and interest penalty is discretionary. The trial court must hold a hearing on remand to determine the award of reasonable attorney's fees incurred by Contractor to prove the City violated the Procurement Code. The amount awarded

will be affirmed unless the trial court has abused its discretion. *Pietrini,* 901 A.2d at 1053. In short, we reverse the trial court's refusal to consider the award of penalty interest or attorney's fees and remand for further proceedings.

### Breach of Contract Damages

The City argues that Contractor was not entitled to suspension costs because the equipment was not located at the worksite. Further, it paid Contractor for all completed contractual items. Also, it argues that Contractor was not entitled to extended overhead damages or lost anticipated profits because Publication 408 does not allow recovery for these types of damages as part of a delay claim.

■■■■ A plaintiff must provide information to allow the jury to calculate damages without engaging in speculation. *Bolus v. United Penn Bank,* 363 Pa.Super. 247, 525 A.2d 1215, 1226 (1987). Damages need not be proven with mathematical certainty. *Id.* The determination of the amount of damages is for the jury, and a reviewing court must give deference to the jury's determination. *Delahanty v. First Pennsylvania Bank, N.A.,* 318 Pa.Super. 90, 464 A.2d 1243, 1257 (1983).

■■■■ On suspension costs, Section 110.02(b) of Publication 408 provides that when a suspension is caused by conditions "differing materially" from inherent and normal conditions, an adjustment will be made, excluding loss of anticipated profits. Publication 408, § 110.02(b); R.R. 1355a. Payment for the additional work is determined by Section 110.03(d). Section 110.03(d) states that for contractor-owned equipment, the contractor is entitled to an amount equal to the hourly rental rate, as

---

**13.** *City of Independence* interprets similar language in a statutory provision similar to Section 3935 of Pennsylvania's Procurement Code and is persuasive authority that the statutory penalty and attorney's fees must be awarded where bad faith is found.

determined by the Rental Rate Blue Book for Construction Equipment. Publication 408, § 110.03(d); R.R. 1359a. Section 110.03(d) also states that "[i]f equipment or machinery is required at the work site on a standby basis, but is not operating, compensation will be at 50% of the adjusted hourly rate, exclusive of operating costs." Publication 408, § 110.03(d)(3.a); R.R. 1359a. The City argues that because not all of Contractor's equipment was located at the work site during the suspension, Contractor was not entitled to suspension costs.

Section 110.03(d) of Publication 408 gives a contractor a specified hourly rental rate for the equipment it needed to do the project, and it limits this rent for equipment on "standby." As Maloney explained, the limitation in Section 110.03(d) deals with payment for equipment on standby during ongoing work. However, equipment is not on standby where a project has been suspended and, therefore, the 50% limitation does not apply. The City's expert offered another point of view, but the jury rejected it. Further, when Maloney computed the damages, he excluded equipment that was being used on other projects from his suspension costs calculation. The jury's award of suspension costs for equipment placed in limbo by

the project's suspension did not violate Section 110.03(d).

We also reject the City's argument that Contractor was required to request an adjustment within seven days of the City's notice to resume work under Section 107.16(C) of Publication 408.[14] The City's notice to Contractor was not valid because it had not obtained PennDOT's approval. Accordingly, Contractor did not have to request an adjustment.

The City argues that it paid for all completed contract items and that Contractor did not establish that it incurred $88,000 in unreimbursed material costs. Contractor counters that the jury accepted Maloney's testimony and rejected the testimony of the City's expert on this disputed matter.[15] Contractor's expert testified that the company purchased materials for the project, and Maloney's examination of the company's records identified the purchases not reimbursed to total $88,000.

■ Finally, the City argues that Contractor was not entitled to overhead or lost profits under Section 111.02 of Publication 408. Section 111.02 of Publication 408 states that the following items may not be recovered in a delay claim: profit, loss of profit, labor inefficiencies, home office overhead, and consequential damages.

14. It states:

> **Responsibility During Temporary Suspension of Work.** Should the work be temporarily suspended, wholly or in part, according to the provisions specified in Section 105.01(b), written notification will be given of the suspension and the reason(s) for the suspension.
>
> If the work is temporarily suspended, wholly or in part, due to the fault of the Contractor, the Required Completion Date and any specified Milestone Date(s) will not be changed, unless otherwise directed by the Chief Engineer, Highway Administration.
>
> After a whole or partial suspension, upon receipt of written notice from the Represen-

tative, actively resume work according to the detailed schedule of operations.
Publication 408, § 107.16(c); R.R. 1337a.

15. We disagree with the City that Contractor was required to present an evidentiary foundation for the exact amount before Maloney was permitted to testify. Rule 703 of the Pennsylvania Rules of Evidence permits an expert to rely on facts or data that he has been made aware of without introduction of the evidence itself if such evidence is customarily relied upon by experts in the particular field. PA. R.E. 703. Therefore, Maloney could rely on the accounting records of Contractor in determining the amount without having a witness introduce the amount first.

Publication 408, § 111.02; R.R. 1377a.[16] However, Contractor did not seek damages for a delay claim but, rather, for a suspension to which Section 111.02 does not apply. *See* Publication 408, § 111.01; R.R. 1377a (stating that delay damages arise only "from delays created by [ ] negligent acts or omissions" or under Section 105.06). Section 111.02 does not bar recovery for overhead or lost profits as part of a suspension claim and, consequently, Contractor was entitled to recover for those losses.

### Pre–Judgment and Post–Judgment Interest

In its cross-appeal, Contractor argues that it was entitled to pre-judgment interest as a matter of right and to post-judgment interest as well because the damages were ascertainable by computation. The City counters that pre-judgment interest is not mandatory but discretionary. The City does not address the issue of post-judgment interest.

■ On pre-judgment interest, Pennsylvania has adopted Section 354 of the Restatement (Second) of Contracts, which states:

(1) If the breach consists of a failure to pay a definite sum in money or to render a performance with fixed or ascertainable monetary value, interest is recoverable from the time for performance on the amount due less all deductions to which the party in breach is entitled.

(2) In any other case, such interest may be allowed as justice requires on the amount that would have been just compensation had it been paid when performance was due.

RESTATEMENT (SECOND) OF CONTRACTS § 354(1)-(2); *Penneys v. Pennsylvania Railroad Co.,* 408 Pa. 276, 183 A.2d 544, 546 (1962) (adopting Restatement section). Consequently, "a party is not chargeable with interest on a sum unless its amount is fixed by the contract or he could have determined its amount with reasonable certainty so that he could have made a proper tender." RESTATEMENT (SECOND) OF CONTRACTS § 354 cmt. c.

■ We agree that Contractor is entitled to pre-judgment interest on the definitive contract items. Even if the City contested the items in good faith, prejudgment interest must still be awarded. *Gold & Company, Inc. v. Northeast Theater Corporation,* 281 Pa.Super. 69, 421 A.2d 1151, 1154 (1980). However, we do not agree that Contractor is entitled to pre-judgment interest on the suspension costs, extended overhead or anticipated lost profits. The City could not ascertain these amounts with reasonable certainty. The suspension costs continued to increase during the suspension, but the

---

16. It states:

**General Conditions Concerning Delay Claims**—Because of the nature and extent of the damages arising out of work that has been delayed; of the need for [PennDOT] to be made aware of potential delay claims promptly after the cause or causes of delay have arisen so that record-keeping can begin; and of the parties' intent to have all such claims as fully documented as possible, strict adherence to the provisions of this section is an essential condition precedent to filing a delay claim with the Board of Claims. The following items of damage cannot be included in any delay claim against [PennDOT]:
- profit;
- loss of profit;
- labor inefficiencies;
- home office overhead, including but not limited to costs of any kind from home office personnel; and '
- consequential damages, including but not limited to loss of bonding capacity, loss of bidding opportunities, and insolvency.

Publication 408, § 111.02; R.R. 1377a.

amount of increase was not capable of ready determination. Similarly, the City could not have reasonably determined Contractor's overhead and lost anticipated profits in advance of trial. As a result, we affirm the trial court's denial of pre-judgment interest on the suspension costs, extended overhead, and anticipated lost profits, and we reverse the denial of pre-judgment interest on the contract items amount. These items include, for example, mobilization costs, field office and inspection facilities costs, and the costs of a microcomputer.

Regarding post-judgment interest, the general rule is that the verdict winner is entitled to interest on a judgment from the date of the verdict. 42 Pa.C.S. § 8101 ("Except as otherwise provided by another statute, a judgment for a specific sum of money shall bear interest at the lawful rate from the date of the verdict or award....."). The award from the jury of $927,299 specified that Contractor is entitled to post-judgment interest at the statutory rate of six percent per annum from February 1, 2013, until the full amount of the verdict is paid by the City. 41 P.S. § 202.[17]

### Conclusion

For these reasons, we affirm in part and reverse in part the trial court's order. The matter is remanded to the trial court for further proceedings to determine the amount of attorney's fees and penalty interest owed to Contractor under the Procurement Code. The trial court is also instructed to mold the verdict to include pre-judgment and post-judgment interest in accordance with the above opinion.[18]

Judge McCULLOUGH concurs in the result only.

### *ORDER*

AND NOW, this 21st day of October, 2014, the order of the Court of Common Pleas of Lehigh County dated January 31, 2013, in the above-captioned matter is hereby AFFIRMED in part and REVERSED in part. The matter is REMANDED to the trial court for proceedings consistent with this opinion.

Jurisdiction relinquished.

---

**17.** It states:

Reference in any law or document enacted or executed heretofore or hereafter to "legal rate of interest" and reference in any document to an obligation to pay a sum of money "with interest" without specification of the applicable rate shall be construed to refer to the rate of interest of six per cent per annum.

Act of January 30, 1974, P.L. 13, *as amended,* 41 P.S. § 202.

**18.** We note that Maloney provided a Second Supplemental Expert Report which calculated the amounts of pre-judgment and post-judgment interest, as well as the post-judgment penalties. It is up to the trial court to determine if these amounts are accurate and award amounts consistent with this opinion.