J-A27006-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

S P.                                          :  IN THE SUPERIOR COURT OF
                                              :      PENNSYLVANIA
                    Appellant                 :
                                              :
                                              :
                                              :
           v.                                 :
                                              :
                                              :
                                              :
B.S.                                          :  No. 1204 EDA 2018

Appeal from the Order March 16, 2018
In the Court of Common Pleas of Lehigh County Civil Division at No(s):
No. 2015-FC-1443

S.P.                                          :  IN THE SUPERIOR COURT OF
                                              :      PENNSYLVANIA
                    Appellant                 :
                                              :
                                              :
                                              :
           v.                                 :
                                              :
                                              :
                                              :
B.S.                                          :  No. 1205 EDA 2018

Appeal from the Order March 16, 2018
In the Court of Common Pleas of Lehigh County Civil Division at No(s):
No. 2015-FC-1443

BEFORE:  BOWES, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY BOWES, J.:                      **FILED JANUARY 16, 2019**

In these consolidated appeals, S.P. ("Father") appeals *pro se* from the

final custody order dated March 14, 2018, and entered March 16, 2018, in the

Court of Common Pleas of Lehigh County, that granted Father and B.S.

("Mother") shared legal custody, and Mother primary physical custody, of their

daughters, S.H.S. and S.S., disposed of various issues regarding S.H.S.'s and

S.S.'s passports, denied Father's request for counsel fees, and continued a

custody trial scheduled for October 25, 2017. We quash the appeal docketed at 1205 EDA 2018 and affirm the order that is the genesis of the appeal filed at 1204 EDA 2018.[1]

To quote the trial court, "This has been a long and contentious dissolution of a marriage and family involving a tortured procedural history due to multiple family, civil, and criminal court actions and various interlocutory appeals and petty behavior on the part of both parties." Trial Court Opinion, 5/24/18, at 9. Mother and Father married in March 20, 2005, the children were born during 2005 and 2007, respectively, and Father initiated the first custody proceedings during 2014, to prevent what he believed was Mother's intentions to take the children to India. The 2014 proceedings culminated with Father withdrawing his custody complaint after the trial court issued an order that precluded Mother for traveling with the children outside of Pennsylvania.

Thereafter, Mother revived the custody litigation during 2016 in response to father's divorce complaint, which had neglected to include a count

---

[1] On May 18, 2018, this Court consolidated the appeals *sua sponte*. However, our subsequent review of the certified record revealed that the appeal filed at 1205 EDA 2018 stems from a series of interlocutory orders relating to the children's travel that were subsumed by the final custody order that is the genesis of the appeal entered at 1204 EDA 2018. Accordingly, we quash the appeal docked at 1205 EDA 2018 and confront the merits of Father's travel-related complaints in addressing the remaining appeal that is properly before this Court. **See Betz v. Pneumo Abex, LLC**, 44 A.3d 27, 54 (Pa.2012) ("an appeal of a final order subsumes challenges to previous interlocutory decisions") "); Pa.R.A.P. 341 note ("A party needs to file only a single notice of appeal to secure review of prior non-final orders that are made final by the entry of a final order[.]").

J-A27006-18

for custody. For the ensuing year, the parties congested the trial docket with countervailing petitions for relief regarding the children's passports and two subsequent appeals to this Court. Eventually, on June 26, 2017, the parties stipulated to an agreed upon Interim Custody Order that was entered on June 27, 2017. Additional minor grievances and requests for continuations ensued until the custody matter was scheduled for trial on March 8, 2018.

The parties appeared, *pro se*, at the March 8, 2018 trial, and agreed that the interim custody ordered entered on June 27, 2017 should govern as the final custody order, with minor adjustments. Accordingly, the court entered the stipulated final custody order, granting Mother and Father shared legal custody of S.H.S. and S.S, and awarding Mother primary physical custody of the children with Father having partial physical custody on alternating weekends. Father filed timely notices of appeal.[2]

Father raises the following issues for our review:

1. Did the trial court commit [an] abuse of discretion and errors [of] law by enter[ing a] custody order that is not [in the] best interest of the children, failed to conduct [a] full-blown custody trial pursuant to 23 Pa.C.S.A § 5328(a), and then concluding that [the] parties came to a custody agreement?

_____

[2] Father did not concurrently file concise statements of errors complained of on appeal as required by Pa.R.A.P. 1925(a)(i)(2) and (b). On April 18, 2018, the trial court issued an order directing Father to file concise statements by April 25, 2018, and Father timely complied. As we discern no prejudice to Mother from Father's error, we decline to quash Father's appeal. *See In re K.T.E.L.*, 983 A.2d 745, 747 (Pa.Super. 2009) (holding that, in a children's fast track case, the failure to file a concise statement along with the notice of appeal will result in a defective notice of appeal, to be decided on a case-by-case basis).

- 3 -

2.      Did the trial court commit [an] abuse of discretion and errors [of] law in its authority [to] enter[] an order that overturn[ed] the appellate procedure, violated the Due Process Clause, U.S. Fourteenth Amendment Rights, Pennsylvania Constitution Rights at Article 1 and Section 1, Article V, Section 17(b), Judicial Conduct Rules, [f]ailed to follow the coordinate [j]urisdiction rule, entered an order when the trial court lacked jurisdiction, without proper legal procedure followed, and then made harmful and irreparable loss?

3.      Did the trial court commit [an] abuse of discretion and errors [of] law by [] enter[ing] the orders again and again for the children's passports[,] subject matter that [was] already litigated in this Court?

4.      Did the trial court commit [an] abuse of discretion and errors [of] law by not granting counsel fees for [] Father when Mother['s] actions were vexatious [] and [in] bad faith?

5.      Did the trial court commit [an] abuse of discretion and errors [of] law to allow Mother to misuse/manipulate the various "systems" from which she desired to receive benefits in all forms, but not limited to, including court orders, residency, income, aid, support, delay and dissipating marital assets in favor to her in this and past cases in the Lehigh County Court's any and all legal matters? [sic.]

Father's brief at 4-5.[3]

In custody cases under the Child Custody Act, ("the Act"), 23 Pa.C.S.

§ 5321-5340, our standard of review is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion.  We must accept findings

_____

[3] Mother did not file a brief.  Counsel has represented Father at various points in the litigation.  Counsel for Father initially filed Father's Brief.  Father's counsel subsequently withdrew and this Court permitted Father to file an amended brief *pro se*.

of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa.Super. 2012) (citation omitted).

We have stated:

[t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa.Super. 2006) (*quoting Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa.Super. 2004)).

In *M.A.T. v. G.S.T.*, 989 A.2d 11 (Pa.Super. 2010) (*en banc*), we stated the following regarding an abuse of discretion standard.

Although we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

*Id*. at 18-19 (quotation and citations omitted).

Regarding the definition of an abuse of discretion, this Court has stated: "[a]n abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused." ***Bulgarelli v. Bulgarelli***, 934 A.2d 107, 111 (Pa.Super. 2007) (quotation omitted).

With any custody case decided under the Act, the paramount concern is the best interests of the child. **See** 23 Pa.C.S. §§ 5328(a). Section 5328(a) sets forth the best interest factors that the trial court must consider. **See** ***E.D. v. M.P.***, 33 A.3d 73, 80-81, n.2 (Pa.Super. 2011). Generally, trial courts are required to consider "**[a]ll** of the factors listed in [§] 5328(a) . . . when entering a custody order." ***J.R.M. v. J.E.A.***, 33 A.3d 647, 652 (Pa.Super. 2011) (emphasis in original). However, it is not necessary for a court to consider the § 5328(a) factors, or to conduct an evidentiary hearing, when the record reveals that the court entered the subject custody order upon agreement by both parties.

Rule 1915.7 of the Rules of Civil Procedure provides:

> If an agreement for custody is reached and the parties desire a consent order to be entered, they shall note their agreement upon the record or shall submit to the court a proposed order bearing the written consent of the parties or their counsel.
>
> . . . .

**Explanatory Comment – 1981**

As in other types of litigation, determination of an action through agreement of the parties is a desirable goal. However, the power of the parties to enter into an agreement is not absolute. In **Com. ex rel. Veihdeffer v. Veihdeffer**, 235 Pa. Super. 447, 344 A.2d 613, 614 (1975), the Superior Court stated:

It is well settled that an agreement between the parties as to custody is not controlling but should be given weight taking into consideration all the circumstances. . . . A child cannot be made the subject of a contract with the same force and effect as if it were a mere chattel has long been established law.

If the parties seek to have their agreement incorporated into a consent order, Rule 1915.7 provides two methods of presenting the agreement to the court. The first is by noting the agreement on the record. The second is by submitting to the court a proposed order bearing the written consent of the parties. Whichever method is used, however, the parties must be present before the court unless the court directs otherwise. The child affected by the order need be present only if the court so directs.

Pa.R.C.P. 1915.7.

In his first issue, Father argues the trial court erred in failing to conduct a custody trial, and failed to analyze the factors set forth in 23 Pa.C.S. § 5328(a). Father acknowledges that he and Mother informed the court they were attempting to reach a custody agreement, but insists that no such agreement was reached. Father's brief at 9. Father contends he and Mother could not reach an agreement on custody because Mother desires to take S.H.S. and S.S. to India. **Id**. Father claims "[b]oth Father and Mother did not agree for the custody agreement." **Id**. at 10. Father asserts the trial court violated both the Child Custody Act, and his due process and equal protection rights, by failing to hold a custody trial. **Id**. at 11-12. Father

- 7 -

argues it is "very clear before we even leave the first page of the trial transcript . . . that there is no agreement between the parties." *Id*. at 13. Although Father claims there is "no consent for the terms and conditions," Father does not explain what portions of the final custody order contradict his agreement with Mother. *Id*. at 12. Father only asserts that the trial court failed to "consider the primary custody of the children to the father during summer vacation when the [m]other did not raise the objection." *Id*. at 10. Father also requests that this Court order the trial court not to interview S.H.S. and S.S. to the extent that a custody trial is ordered. *Id*. at 14-15.

Father's first issue does not merit relief. At the start of the custody hearing, the court attempted to determine whether Mother and Father could reach an agreement regarding legal and physical custody, as they had previously informed the court a resolution was forthcoming. Both parties agreed that the interim custody order generally worked for them:

> THE COURT: How has custody gone? Is the order working?
>
> [Mother]: Yes, ma'am.
>
> THE COURT: Yes?
>
> [Father]: Yes.

N.T., 3/8/18, at 3.

Subsequently, the following discussion occurred:

> THE COURT: Let's start from common sense. Instead of picking through the pile of hay, let's talk about what we need to move forward. Can we do that?

[Father]: On the custody?

THE COURT: On the custody. The only thing we're here on is the custody, to resolve the custody final order and address any of the contempts.

[Father]: Correct.

THE COURT: And what is the penalty you want for the contempts. Let's talk about the custody first.

[Father]: Okay, let's talk about custody. Again, thank you. Again, I really don't want to drag the case. Custody, the custody order, I want to -- the current custody order that is dated on June 27th of 2017 does not include any emergency situations. For example, if there's snow and then if I'm sick or I'm affected by flu, it's not there. We need to include that. No, it's not there.

THE COURT: Okay.

N.T., 3/8/18, at 7-8.

Father reiterated his concerns regarding emergency situations, as

follows:

[Father]: The court order says 24 hours notice. I give 24 hours notice. Most of the times she won't respond. I have no idea whether she is coming or not, but still I come to see my children. The second question, so basically I want the same custody order, I want the emergency situation accommodate both the parents.

N.T., 3/8/18, at 10.

Accordingly, Father indicated that his concern with the interim custody order was that it lacked provisions for emergency situations. The trial court proceeded to determine whether there were other disputes. The parties agreed that they would share legal custody. *Id*. at 11. Mother and Father agreed that Father would continue to exercise physical custody on alternate

weekends from either Friday night or Saturday morning through Sunday night. *Id*. at 15, 19-20, 71.  They agreed on whether the children could have their phones with them and the level of contact the children could have with the non-custodial parent. *Id*. at 41, 61. With regard to vacation, Father suggested that each parent have 15 days of vacation time. *Id*. at 12.  Father then agreed to four weeks of vacation time each. *Id*. at 13.  However, he insisted that the children not go to India. *Id*.  The court deferred a decision with respect to overseas travel. *Id*. at 14, 31-32.

Contrary to Father's argument, it is apparent that he reached an agreement with Mother regarding physical and legal custody of S.H.S. and S.S.[4]  They agreed on shared legal custody and, pursuant to Father's assertion that the interim order "worked," agreed on a physical custody schedule while addressing Father's concerns about emergencies.  Although Father raises vague claims regarding the failure of Mother and Father to agree, the record indicates that Mother and Father agreed to the custody order the court entered.  Rule 1915.7 specifically permits parties to "note their agreement upon the record. . ."  The court then appropriately placed the agreement into an order.  As Father agreed to the terms regarding physical and legal custody, and has failed to allege how the court failed to accurately set forth that agreement in the custody order, Father's first issue fails.

---

[4] The trial court also "weighed the agreement and found it to be in the best interests of [S.H.S. and S.S.] . . ."  Trial Court Opinion, 5/21/2018, at 7.

Father's second and third issues relate to Father's assertion that the trial court erred in issuing various orders regarding S.H.S.'s and S.S.'s passports. Father's brief on these issues is not a model of clarity, using a scattershot approach quoting numerous legal principles without sufficient, or, in many cases, any, connection to the facts of his case. Generally, Father asserts that the trial court erred with respect following the prior trial court orders regarding the children's passports and international travel, dated May 5, 2016, May 16, 2016, August 8, 2016, and June 27, 2017, respectively. While Father raises myriad reasons why those interlocutory orders are invalid and should be reversed, we discern no error of law or abuse of discretion with regard to the trial court's orders.

As previously noted, disputes about the children's passports have permeated Mother's and Father's divorce and resulted in several orders, which we briefly summarize. In March of 2016, the Honorable Carol McGinley addressed Mother's emergency petition for special relief related to the passports, wherein Mother requested that Father be ordered to sign documents so that S.H.S.'s passport could be renewed. Judge McGinley denied Mother's petition because "the issuance of the passport renewal is not an emergency situation." Order of Court, 3/7/16. Mother appealed this order and then withdrew the appeal. By order dated May 5, 2016, the Honorable Michele A. Varricchio granted Mother sole legal custody for the purpose of obtaining passports for S.H.S. and S.S., and requiring Mother to relinquish the passports to the Clerk of Judicial Records. On May 16, 2016, the court vacated

- 11 -

the May 5, 2016 order.[5] On August 8, 2016, the court issued another order regarding the passports, pursuant to an agreement between Mother and Father. The August 8, 2016 order provides for Father to apply for S.H.S.'s passport, and for the Clerk of Judicial Records to hold S.H.S.'s and S.S.'s passports. Further, the order includes provisions pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act, 23 Pa.C.S. §§ 5401-5482. On June 27, 2017, the trial court issued another order, directing: "[t]he parties shall take all reasonable measure to insure that their children's passports remain current and renewed within a reasonable time of expiration."

Father's argument is premised on the assertion that the March 7, 2016 order concluded all issues related to S.H.S.'s and S.S.'s passports, and that all subsequent orders regarding the passports are therefore improper. Yet, the March 7, 2016 order states "that the issuance of the passport renewal is not an emergency situation at the present time. . ." On May 11, 2016, the court issued a corrected order, *nunc pro tunc*, to include the following language in the March 7, 2016 order: "It is anticipated that the passport issue will become part of the issues relating to who should have custody of these children in the pending custody action. If sole custody is granted to one party or the other, then that party will have the right to make the passport application for the child. If shared legal custody is granted, then the [c]ourt

_____

[5] The May 16, 2016 order refers to "the May 6, 2016" order of court, presumably because May 6, 2016 is the date the May 5, 2016 order was time-stamped.

- 12 -

can resolve the passport issue at that time." On May 12, 2016, Judge McGinley entered an order reaffirming that the passport issue "should be decided as part of the entire package of custody." Accordingly, contrary to the main premise of Father's argument, the later orders entered by Judge Varricchio regarding S.H.S.'s and S.S.'s passports are entirely consistent with the March 7, 2016, May 11, 2016, and May 12, 2016 orders.

Moreover, while Father asserts that the court erred with respect to the orders dated May 5, 2016 and May 16, 2016, the May 16, 2016 order vacated the May 5, 2016 order, stayed all matters related to the passports, and directed the Family Court Administrator to assign the action to a judge.

In *Deutsche Bank Nat. Co. v. Butler*, 868 A.2d 574, 577 (Pa.Super. 2005), we held:

> "Generally, an actual claim or controversy must be present at all stages of the judicial process for the case to be actionable or reviewable.... If events occur to eliminate the claim or controversy at any stage in the process, the case becomes moot." *J.S. v. Whetzel*, 860 A.2d 1112, 1118 (Pa.Super. 2004) (quotation marks and citation omitted). "An issue can become moot during the pendency of an appeal due to an intervening change in the facts of the case or due to an intervening change in the applicable law." *In re Cain*, 590 A.2d 291, 292 (Pa. 1991). "An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect." *Rivera v. Pennsylvania Dept. of Corrections*, 837 A.2d 525, 527 (Pa.Super. 2003).

In light of the fact that the May 16, 2016 order vacated the May 5, 2016 order, stayed issues regarding the passports, and requested the assignment of a judge, there is no actual claim or controversy remaining regarding either

- 13 -

order. Accordingly, Father's assertions of error regarding the May 5, 2016 and May 16, 2016 orders are moot.

With respect to the August 8, 2016 order, Father asserts that the order was agreed upon, but that it includes provisions he did not agree to, and failed to include provisions he desired. With regard to the June 27, 2017 order, Father objects to the court entering the order, presumably because it included the direction: "the parties shall take all reasonable measure[s] to insure that their children's passports remain current and renewed within a reasonable time of expiration."

The language used by the court in the August 8, 2016 order was the result of an agreement between Mother and Father. To the extent that Father asserts provisions should have been removed or inserted, the order, as drafted, appropriately confirmed the parties' agreement and is not an abuse of the trial court's discretion.[6] Further, with regard to the June 27, 2017 order,

_____

[6] At the hearing, Father stated, "I am going to get [the passport]. I am going to hand over to the court. I promise to this court I will start the process within a week. . ." N.T., 8/1/16, at 6. The order includes the following language:

> "The children's passports shall be relinquished to Lehigh County Clerk of Judicial Records. Mother or Father may request possession of the passports for purposes of Court Ordered visitation outside of the United States for a specific period of time. On all other occasions, to Lehigh County Clerk of Judicial Records shall maintain control of the passports for the minor children."

Order of Court, 8/8/16, at ¶ 1.

regardless of whether the court directed the parties to keep their children's passports current as a result of Mother's petitions relating to this issue, or *sua sponte*, the court's actions do not constitute an abuse of discretion. While the parties engaged in extended litigation over the passports, the trial court's belief that the parties should work together so that the passports do not expire is appropriate. Accordingly, we affirm the trial court's orders regarding the passports.

In his fourth issue, Father faults the trial court for failing to sanction Mother for filing numerous petitions regarding S.H.S.'s and S.S.'s passports. *Id*. at 43-51. While Father includes citations to various cases and statutes, again without any clear discussion of their applicability to this matter, ultimately he asserts the trial court erred in failing to grant him counsel fees pursuant to 42 Pa.C.S. § 2503. *Id*. at 49-51. Alternatively, Father requests that this Court award him counsel fees for Mother's actions pursuant to Rule 2744 of the Pennsylvania Rules of Appellate Procedure. *Id*. at 51.

Generally, "[t]he denial of a request for attorney's fees is a matter within the sound discretion of the trial court, which will be reversed on appeal only for a clear abuse of that discretion." ***Cummins v. Atlas R.R. Const. Co.***, 814 A.2d 742, 746 (Pa.Super. 2002).

Pursuant to 42 Pa.C.S. § 2503(7), a court may award attorney's fees as a sanction if it is shown that a party's conduct during the pendency of a matter was dilatory, obdurate, vexatious or done in bad faith. Similarly, 42 Pa.C.S.

§ 2503(9) permits a trial court to award reasonable counsel fees to a litigant when, *inter alia*, that litigant's opponent initiated the action arbitrarily, vexatiously, or in bad faith. Additionally, 23 Pa.C.S. § 5339 provides authority for the award of counsel fees and costs in custody matters, not only in cases of contempt, but also in cases where a party's conduct is "obdurate, vexatious, repetitive or in bad faith." Pennsylvania Rule of Appellate Procedure 2744 provides that this Court may award reasonable counsel fees "if it determines that an appeal is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious." Pa.R.A.P. 2744. Under such circumstances, we "may remand the case to the trial court to determine the amount of damages authorized by this rule." Pa.R.A.P. 2744.

The trial court explained its rationale for not awarding Father counsel fees as follows:

> Mother's filing multiple Petitions for Special Relief regarding the passport matter has been repetitive. However, "although repetition alone may be grounds for imposition of counsel fees, we conclude that the circumstances here do not warrant an award." *A.L.-S. v. B.S.*, 117 A.3d [352, 362 (Pa.Super. 2015)]. Likewise, the [c]ourt concluded that after balancing Mother's repetitive filings regarding the passports against Father's *pro se* repetitive voluminous single-spaced filings regarding possession of the marital residence, mortgage payments, and other various issues[,] despite his being represented by counsel[,] that the circumstances in this matter did not warrant an award of counsel fees. *See* N.T., 4/5/2017, at 44, 46:7-47:21. Thus, the [c]ourt respectfully requests that its Order of April 7, 2017 be affirmed.

Trial Court Opinion, 5/24/18, at 35.

- 16 -

The record supports the trial court's analysis. Although Mother engaged in conduct that has not served to move the parties' case forward in an orderly and expeditious manner, the same can be said for Father. The trial court observed Mother's and Father's actions first-hand and determined that sanctions were not warranted. We discern no abuse of discretion with respect to the trial court's decision. Father's argument regarding counsel fees pursuant to Rule 2744 is meritless. Mother has not engaged in any actions in this appeal that are obdurate, dilatory, or vexatious. Indeed, Mother has not participated in this appeal at all. Accordingly, we reject Father's request for counsel fees pursuant to Rule 2744.

Father's fifth issue combines complaints about Mother's use of child support payments, issues regarding his children's passports, unclean hands, and Mother's purported alienation of his children. Father claims that the trial court erred in allowing "Mother to misuse/manipulate the various 'systems' from which she desired to receive benefits in all forms. . ." Father's brief at 51. Father's argument incorporates his prior issues, which we have addressed above, and adds an argument centering on his belief "[t]he trial court [has] always been delaying any action in the family law [case]." *Id*. at 53.

Father's issue involves a pure question of law. Therefore, "our standard of review is *de novo*, and our scope of review is plenary." *Harrell v. Pecynski*, 11 A.3d 1000, 1003 (Pa.Super. 2011) (citations omitted).

Our review of the record confirms that the trial court made every effort to move Father's case forward expeditiously. While there have been delays, they have not been extensive, and have been caused, at least in part, by Father's actions. We discern no error in the trial court's handling of the scheduling of the custody matters.

Accordingly, for the foregoing reasons, we quash the appeal listed at 1205 EDA 2018, and having reviewed the merits of the issues that relate to the appeal docketed at 1204 EDA 2018, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/16/19